Opinion issued June 7, 2012



In The

# Court of Appeals

For The

# First District of Texas

―――――――――――――――

## NO. 01-11-00872-CV

―――――――――――――――

**RUPA KOTHARI, Appellant**

**V.**

**REFUGIO OYERVIDEZ, Appellee**

On Appeal from the 240th District Court
Fort Bend County, Texas
Trial Court Case No. 10-DCV-182037

# O P I N I O N

Appellant, Rupa Kothari, challenges the trial court's rendition of summary judgment in favor of appellee, Refugio Oyervidez, in Oyervidez's suit against Kothari for foreclosure of liens on two properties that Kothari purchased at a tax

sale. In four issues, Kothari contends that the trial court erred in granting summary judgment in favor of Oyervidez and denying her motions to amend pleadings, for new trial, and for continuance.

We reverse and remand.

## Background

On September 25, 2007, Fort Bend County filed suit in the 434th District Court of Fort Bend County against Antonio Gonzalez to foreclose on two of his properties based on property tax liens for unpaid taxes (the "tax suit"). The County joined in the tax suit all other taxing units that had claims for delinquent taxes on the properties. It is undisputed that, at the time the County commenced the tax suit, Oyervidez held no liens on or other interests in the properties. Thus, at this time, he was not joined[1] in the tax suit, nor did he intervene.[2] There is no evidence in the summary-judgment record to indicate whether or not the County, at that time, recorded a notice of lis pendens in the Fort Bend County real property records or filed any documents to indicate that the tax suit had been filed.

While the tax suit was pending, Gonzalez, who still owned the properties, executed a real estate lien note on the properties on January 6, 2009. In this note, Oyervidez agreed to loan Gonzalez $45,000, and Gonzalez agreed to repay the loan

---

[1] *See* TEX. R. CIV. P. 39, 40.

[2] *See* TEX. R. CIV. P. 60.

2

by making monthly payments of $4,500 for a term of 10 months, with any "unpaid amounts" due by "the final scheduled payment date." The note imposed "annual interest" of 12%, but only on any "matured, unpaid amounts," and provided that, as security for payment, Oyervidez obtained a lien against each property. The summary-judgment record reveals that Oyervidez filed the note in the real property records of Fort Bend County on January 16, 2009. It is undisputed that, at the time the real estate lien note was executed, Gonzalez informed Oyervidez that he owed outstanding taxes of $10,000 on the properties.

On May 13, 2009, the 434th District Court rendered judgment in the tax suit in favor of the taxing units, noting that valid "superior" liens existed on the properties, and concluding,

> that a lien exists against each of the lots . . . for the amount of the taxes, interest, penalties, abstractor's fees and costs of court found to be due on each particular lot, . . . which lien is prior and superior to all claims, right, title, interest, or liens asserted by any Defendant(s), and that Plaintiff(s)/Intervenor(s) has foreclosure of their liens on each of the lots . . . as against the Defendant(s) or any person claiming under the Defendant(s) by any right acquired during the pendency of this suit; . . . . that the officer executing the order of sale shall make proper conveyance to the purchaser(s) of the land, as prescribed by law, subject to such right of redemption, and shall proceed to place the purchaser(s) in possession to the purchaser at the sale to the purchaser's assigns no sooner than twenty days after the date on which the purchaser's deed from the officer making the sale is filed of record.

3

Oyervidez did not intervene in the tax suit prior to judgment, nor was he joined by any of the taxing units.In August 2009, in accord with the judgment in the tax suit, a notice of tax sale was issued.

Oyervidez never received any payments from Gonzalez under the January 6, 2009 note. In September 2009, nine months after agreeing to make the loan to Gonzalez, and five months after the 434th District Court had rendered judgment, Oyervidez filed in the Fort Bend County real property records a Notice of Lis Pendens,stating that he had brought suit against Gonzalez in the 400th District Court of Fort Bend County for foreclosure of liens and order of sale. As discussed below, in her summary-judgment response, Kothari presented conflicting evidence on whether Oyervidez had filed any documents in such a manner that would have allowed for her to have discovered the existence of the real estate lien note, the lis pendens, or the lawsuitin the 400th District Court prior to her purchase of the properties at the subsequent tax sale.

Kothari submitted the highest bid at the tax sale and purchased the propertieson October 6, 2009. And, on December 2, 2009, the Fort Bend County constable issued two "Deed(s) Under Order of Sale in Tax Suits" granting Kothari all "right, title, and interest" owned by Gonzalez in the properties. Although Oyervidez complains that he did not receive notice of the tax sale, he does not raise

4

any other complaints about the procedures surrounding the tax sale, and, in his reply brief, he contends that he is not challenging the validity of the tax sale.

On July 1, 2010, approximately nine months after Kothari purchased the properties, Oyervidez filed the instant suit in the 240th District Court of Fort Bend County. In his "Petition Seeking Foreclosure of Lien as Against Kothari and Priority Claim to Excess Proceeds, Punitive Damages, and Motion for Sanctions as Against Gonzalez," Oyervidez alleged,

> At the time of the loan and note Gonzalez informed Oyervidez about a lien for unpaid property taxes in the amount of $10,000. However, Gonzalez did not disclose that Fort Bend County had already filed a foreclosure action of the liens for unpaid taxes.
>
> . . . .
>
> The Note was duly recorded in the Fort Bend County clerk's records on January 16, 2009, and represents a valid lien against the Property.
>
> Fort Bend County filed its Tax Suit to collect the delinquent property taxes due and constituting a lien on the property against Gonzalez and it was granted a default judgment against Gonzalez on May 13, 2009, which ordered and authorized the sale of the property to satisfy the delinquent property taxes due.
>
> Oyervidez was not made a party to Tax Suit and was not given notice of the tax sale that was held October 6, 2009. Kothari purchased the Property at the tax sale on October 6, 2009 for a total amount of $61,500.
>
> The Note was not extinguished by the Tax Suit judgment and subsequent tax sale as a matter of law because Oyervidez was not made a party to the tax suit and was not given adequate and lawful notice of the tax sale; therefore, the Note remains as a valid lien against the property.

5

Kothari is not a purchaser for value because constructive knowledge ofthe preexistingNote and resulting lien is imputed to her as a matter of law because the Note wasfiled of public record as of the date of judgment ordering the tax sale, 5/13/09 and theNote was ofpublic record as ofthe date ofthe tax sale, 10/06/09.

Only a purchaser for value may conclusively presume the validity ofthe tax saleand take free of any claim of a party with a prior interest in the property such asOyervidez has based upon the Note; therefore, Kothari does not take the Property freeand clear ofthe Note and resulting lien. . . . .

The tax deed only vests title to the property subject to the interest owned byGonzalez in the property and because the interest in the property owned by Gonzalez isencumbered by the Note and resulting lien, the property purchased by Kothari is alsoencumbered by the Note and resulting lien. . . .

Oyervidez sought to judicially foreclose his liens against the properties, which were now owned by Kothari.[3]

In her answer, Kothari generally denied Oyervidez's allegations, asserting that she had acquired the properties at a tax sale and they were not "subject to" any liens; the "notice of the tax foreclosure" was imputed to Oyervidez; Oyervidez had

---

[3] Oyervidez's claims against Gonzalez, which are not at issue in this appeal, relate, in part, to the allegation that Gonzalez had wrongfully obtained the "excess proceeds" from the tax sale of the properties and the excess proceeds should have instead been distributed to Oyervidez, a lienholder with priority. *See* TEX. TAX CODE ANN. § 34.02 (Vernon Supp. 2011) ("Distribution of Excess Proceeds"); § 34.03 (Vernon Supp. 2011) ("Disposition of Excess Proceeds"); § 34.04 (Vernon Supp. 2011) ("Claims for Excess Proceeds") (providing that "a person . . . may file a petition in the court that ordered the seizure or sale setting forth a claim to the excess proceeds" and, at a hearing on such petition, the court shall order that proceeds be paid according to specified priorities; placing priority of "any other lienholder" above "former owner of property"). Oyervidez asserts that he has obtained a default judgment on his claims against Gonzalez.

"constructive notice";Oyervidez's suit constituted an impermissible collateral attack on the court-ordered sale; Oyervidez waived any right to recover against Kothari by not making a claim for the excess proceeds from the tax sale; she was a "bonafide purchaser for value without notice of any liens"; Oyervidez failed to "perfect" his lien; Oyervidez did not file his "deed of trust" until "long after" the court-ordered sale; Oyervidez did not file his "Notice of Lis Pendens" until after the court had already ordered the sale;Oyervidez should be estopped from pursuing his claims because he "had notice and/or should have known of the public foreclosure" and "did not try to join or intervene"; and Kothari had a "superior right to any proceeds . . . in the even[t] the court ordere[d] the resell"[4] of the properties.

Oyervidez filed a summary-judgment motion on his claims for judicial foreclosure against Kothari. He attached to his summary-judgment motion his affidavit, in which he testified that,

2.      I executed a Real Estate Lien Note on January 6, 2009 wherein Antonio Gonzalezsigned the note and promised to pay $45,000 plus interest and granted me a lien against his property as collateral. The encumbered property has been sold to and is now owned by RupaKothari. . . .

3.      I advanced the sum of $45,000 to Antonio Gonzalez in accordance with the RealEstate Lien Note.

---

[4]   In their briefing, neither party addresses the question of whether the original tax sale could be invalidated and the properties subject to resale. Thus, we do not address this question.

4. I was never paid and have yet to receive any sum of money from Antonio Gonzalez or Rupa Kothari owed to me under the Real Estate Lien Note.

5. I was not joined as a party in the tax foreclosure suit on Antonio Gonzalez's property encumbered by my real estate lien note and conducted by Fort Bend County.

6. I was not given actual notice of the tax sale of said property conducted by Fort BendCounty.

7. I made written demand for payment of amounts due under the Real Estate Lien Note to defendant, Rupa Kothari on June 4, 2010 and Defendant refused to pay.

Oyervidez argued that the tax sale had not extinguishedhis interest as a lienholderon the properties because he had not been joined as a party in a tax suit; he was not given actual notice of the tax sale; "actual notice to a lien holder of the pendency of a tax action seeking foreclosure of a superior lien is absolutely required under due process and due course of law"; any "judgment rendered absent the joinder of such a lienholder is defective" and "does not dispose of the rights of all of the parties interested in the property"; his liens "survive[d] the tax sale as a matter of law"; the tax sale deeds obtained by Kothari gave her "good and perfect title . . . only to the interest" owned by Gonzalez; "[o]nly a bona-fide purchaser for value may conclusively presume the validity of the tax sale and take free and clear of any claim [sic]" by a party like Oyervidez; Kothari is not a bona-fide purchaser for value because she did not buy in good faith "without knowledge, actual or

8

constructive, of outstanding liens";and Kothari had "constructive knowledge" of his liens.

Kothari filed a summary-judgment motion,assertingthat, for the same reasons articulated in her answer, Oyervidez's liens did not survive the tax sale. Kothari attached to her summary-judgment motion her affidavit, in which she testified,

> I purchased the subject real property at Sheriff's auction on October 6,2009, without any knowledge of any liens againstthe subject property. Ipaid value for the property. I was without any notice of any liens againstthe subject property.There was nothing in the Sheriff's paper work or thereal propertyDeed Records ofFort Bend County, Texas, to let me knowthat someonemight have a lien on the subject propertywhen I paidfor it.

> I did not know anything about Plaintiff or Plaintiff's alleged lienuntil the plaintiffsent me a letter in June of 2010. I would not havepurchased the subjectreal property if I had known of Plaintiff's allegedlien because the lien is for more than the valueof the subject realproperty. If I had known about Plaintiff's alleged lien the Sheriffwouldhavehad to giveme moneyto take the property. A lien drastically reducesthe amountanyone couldafford to bid on a piece of property.Howcan I know what to bid on Sheriff's saleproperty ifthere are hiddenliens?

Kothari also attached to her motion the affidavit of Roy Parikh, a "real estate broker and an expert on real estate transactions," who testified,

> Rupa Kothari purchased the subject property directly from the FortBendCounty, Texas, Sheriff at a public Sheriff's auctionand she was highbidder. Rupa Kothari paid the fair market valuefor the subject property.Therewas nothing in the customary and/or normalplaces (i.e. Court house postings, Sheriff's paper work, DeedRecords) to let Rupa Kothari knowof any outstanding liens

against the subject property. Therewere noknownliens againstthesubject property at the timeof the auction to areasonablyprudent buyer.

Liens drastically affect the amount a buyer canbid on real estate atauction. A buyermust discount for the costof any lien(s) tomake a fairmarketvaluebid on a pieceof real estate. Here, Plaintiff's promissorynote was for morethanthe value of the subject property; therefore, thesubject property wouldnot have beenmarketable (saleable) with Plaintiff'spromissory note as a lien on the subject real property at the time, of theauction.

The trial court denied Kothari's summary-judgment motion, granted Oyervidez summaryjudgment, and ordered that Oyervidez's liens be foreclosed on the properties.

## Standard of Review

To prevail on a summary-judgment motion, a movant has the burden of proving that he is entitled to judgment as a matter of law and there is no genuine issue of material fact. TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995). A plaintiff moving for summary judgment on his claim must establish his right to summary judgment by conclusively proving all the elements of his cause of action as a matter of law. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex.1999). When a defendant moves for summary judgment, she must either (1) disprove at least one essential element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of her affirmative defense, thereby defeating the plaintiff's cause of action. *Cathey*, 900 S.W.2d at

10

341; *Yazdchi v. Bank One, Tex., N.A.*, 177 S.W.3d 399, 404 (Tex.App.—Houston [1st Dist.] 2005, pet. denied). When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary-judgment evidence presented by both sides and determine all questions presented and render the judgment that the trial court should have rendered. *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex.2004). When deciding whether there is a disputed, material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Every reasonable inference must be indulged in favor of the non-movant and any doubts must be resolved in her favor. *Id.* at 549.

## Tax Sale

In her first and second issues, Kothari argues that the trial court erred in granting summary judgment in favor of Oyervidez because "tax liens are superior to and foreclose other liens," "there is no requirement that Oyervidez be joined in or notified of tax suits or tax sales," "Oyervidez's remedy was to redeem the property,"[5]"requiring joinder of persons that acquire interests in property tax suits that were filed before they obtained their interest[s] renders tax foreclosure

---

[5]    *See*TEX. TAX CODE ANN. §§ 34.21–23 (Vernon 2008 & Supp. 2011) (addressing rights of redemption).

11

worthless," the tax suit judgment constituted a "bar" or an affirmative defense to Oyervidez's claim, and the doctrines of res judicata and collateral estoppel preclude Oyervidez's claim.

The Tax Code makes clear that tax liens are superior to most other liens, including liens like those claimed by Oyervidez.[6]*See*TEX. TAX. CODE ANN. § 32.05 (Vernon 2008).The priority given to tax liens "prevails, regardless of whether the debt, lien, future interest, or other encumbrance existed before attachment of the tax lien." *Id*. § 32.05(b–1).Thus, the tax liens upon which the foreclosure proceedings were instituted in the 434th District Court were superior to any liens claimed by Oyervidez.

Under Texas law, generally, if, after a valid foreclosure of a senior lien, a junior lien is not satisfied from the proceeds of a sale, then the junior lien is extinguished. *See, e.g., Diversified Mortgage Investors v. Lloyd D. Blaylock Gen. Contractor, Inc.*, 576 S.W.2d 794, 808 (Tex. 1978); *Jones v. Bank United of Tex., FSB*, 51 S.W.3d 341, 344 (Tex. App.—Houston [1st Dist.] 2001, pet. denied);*Conseco Fin. Servicing Corp. v. J & J Mobile Homes, Inc.*, 120 S.W.3d 878, 883 (Tex. App.—Fort Worth 2003, pet. denied); *Arnold v. Eaton*, 910 S.W.2d

---

[6] The Texas Tax Code does not classify a tax lien as a "first lien." Rather, the Texas Constitution classifies a tax lien as an inextinguishable "special lien" which must be paid to the sovereign. TEX. CONST. art. VIII, § 15. Although there are certain exceptions to the priority status of tax liens, none are applicable in this case. *See*TEX. TAX. CODE ANN.§ 32.05(c) (Vernon 2008).

181, 184 (Tex.App.—Eastland 1995, no writ); *see also**Elbar Invs., Inc. v. Wilkinson*, No. 14-99-00297-CV, 2003 WL 22176624, at *2 (Tex.App.—Houston [14 Dist.] Sept. 23, 2003, pet. denied) (stating that "junior lienholder takes an interest in the property subordinate to the interests of the senior lienholder, and a foreclosure sale of the senior lien extinguishes that interest"). This general rule is in accord with the Tax Code provisions addressing, at least in normal circumstances, the distribution of excess proceeds from the purchase of a property, foreclosed upon as a result of tax liens, at a tax sale. *See*TEX. TAX. CODE ANN. § 34.02 (Vernon Supp. 2011) ("Distribution of Excess Proceeds"); § 34.03 (Vernon Supp. 2011) ("Disposition of Excess Proceeds"); § 34.04 (Vernon Supp. 2011) ("Claims for Excess Proceeds"). Theseprovisionsof the Tax Code indicate thattax liens,like those claimed by a taxing unit such as the County, are given priority,and inferior or junior liens, like those claimed by Oyervidez, may be satisfied pursuant to the statutory schedule for the payout of excess proceeds from a tax sale. *See id*. §§ 34.02, 34.03, 34.04. Here, the properties were sold for amounts that exceeded the value of the tax liens and, thus, the tax liens were fully satisfied. It is undisputed that excess proceeds would be available toany other person, including a junior lienholderlike Oyervidez, who properly "set[] forth a claim to the excess proceeds" under the Tax Code provisions.*See id*. § 34.04. However, for reasons not fully developed in the summary-judgment record, Gonzalez obtained the

13

excess proceeds from the tax sale, Oyervidez did not obtain any of the excess proceeds, and Oyervidez subsequently obtained a default judgment against Gonzalez.

The record establishes that Gonzalez failed to pay taxes on his properties; the taxing units obtained valid, priority liens on the properties;the properties were subject to tax lienswhen Gonzalez became delinquent in his tax payments; the taxing units properly commenced the tax suit seeking foreclosure on the properties; the taxing units commenced the tax suit before Oyervidez agreed to loan Gonzalez $45,000 secured by liens against the properties; Oyervidez was made aware of $10,000 in outstanding tax liabilities at the time he loaned Gonzalez $45,000; a foreclosure sale was properly conducted at which the properties were sold to Kothari; Kothari's purchase price exceeded the value of the tax liens and excess proceeds were available; and the excess proceeds were distributed to Gonzalez rather than Oyervidez.

The critical remaining issue, as framed by the parties in their briefing, concerns whether Oyervidez is entitled to seek foreclosure of his liens against the properties owned by Kothari on the grounds that(1) he was not joined in the tax suit and did not receive notice, actual or constructive, of the pending tax suit and (2) he did not receive notice of the tax sale.

14

In regard to Oyervidez's second point, which is supported by his affidavit testimony, that he was not provided any specific notice of the tax sale, we note thatTexas courts, at least in the general sense, have explained that an inferior or junior lienholder is not entitled to notice of a foreclosure sale. *See Jones*, 51 S.W.3d at 344. And, in regard to tax suits, Oyervidez has not cited any specific statutory provision requiring that he be provided personal service of a notice of the tax sale. Tax Code section 34.01, entitled "Sale of Property," describesthe notice to be provided to a "defendant to the judgment," which, in this case, was Gonzalez. *See*TEX. TAX. CODE ANN. § 34.01 (Vernon 2008). The pertinent provision of the Tax Code states that "[t]he officer charged with the sale [of property] shall give written notice of the sale in the manner prescribed by Rule 21a, Texas Rules of Civil Procedure, as amended, . . . to each person who was a *defendant* to the judgment or that person's attorney."[7]*Id*. (emphasis added).Italso addresses advertising requirements for the tax sale. *See id*. But section 34.01 does not contain any express provisions requiring notice for the tax sale to be provided to any junior lienholders, like Oyervidez, who were not named parties in the underlying suit.Accordingly, assuming that Oyervidez has established as a matter of law that he did not receive notice of the tax sale, we conclude that this fact alone

---

[7]     Section 34.01 provides that the "failure to send the written notice of sale or a defendant's failure to receive that notice is insufficient by itself to invalidate: (1) the sale of the property; or (2) the title conveyed by that sale." *Id*. § 34.01 (c), (d) (Vernon 2008).

does not provide a ground for him to make any claim against Kothari for foreclosure of liens that he held against the properties.

In regard toOyervidez's first point, which is not supported by direct affidavit testimony, that he was not provided notice, actual or constructive, of the pending tax foreclosure proceedings prior to either the entry of judgment in the tax suit or the tax sale, we note that, related to this contention is Oyervidez's complaint, which is an undisputed fact, that he was not joined as a party to the tax suit. As noted above, although Oyervidez did testify that he did not receive notice of the tax sale, he did not provide any direct testimony that he did not receive or obtain actual notice of the pending foreclosure proceedings. And he agreed that, at the time the real estate lien note was executed, Gonzalez had informed him about the outstanding taxes on the property in the amount of at least $10,000. These outstanding taxes, as a matter of law, established the existence of liens on the properties. *See* TEX. TAX CODE ANN.§ 32.01. Oyervidez also did not present any summary-judgment evidence as to whether the taxing units had filed any notice in the Fort Bend County real property records regarding the pending tax suit.[8]*See*TEX. PROP. CODE ANN. § 12.007 (Vernon Supp. 2011)("Lis Pendens"); § 13.004 (Vernon Supp. 2011)("Effect of Recording Lis Pendens").

---

[8]     Neither party filed a no-evidence summary-judgment motion. *See*TEX. R. CIV. P. 166a(i).

Faced with this uncertain and undeveloped record, we cannot say that, as a matter of law, either party has established his or her entitlement to summary judgment. This is because, as summarized below, Texas law suggests that whatever relief, if any, may be afforded to Oyervidez in the circumstances presented here, it is dependent upon facts that are either conflicting or were not developed in the summary-judgment record.

Specifically, we note that although the Tax Code does not contain any express provisions regarding what happens to a junior lien like that held by Oyervidez when a superior tax lien is foreclosed upon, it does address the effect of a tax sale on other types of junior liens. For example, the Tax Code expressly addresses under what circumstances a lien held by a property owners' association for certain assessments and fees is extinguished by a tax sale. *See* TEX. TAX CODE ANN. § 32.05. A tax sale of a property extinguishes the lien held by a property owners' association for all amounts that accrued before the date of sale if(1) the holder of the lien is joined as a party to an action brought under Chapter 33 of the Tax Code by virtue of a notice of the lien on record at the time the action is commenced; *or* (2) the notice of the lien is not on record at the time the action is commenced, regardless of whether the holder of the lien is made a party to the

17

action.[9]*Id.* (emphasis added).This section indicates that the extinguishing of a junior property owners' association lien is dependent upon factors such as when the junior lienholder obtained and recorded the lien, whether notice was provided to the junior lienholder, and whether the junior lienholder was joined in the tax suit.

In regard to Overyvidez's joinder complaint, the relevant Tax Code provisions for real property tax suits do not contain express joinder requirements that would have compelled the County to have joined Oyervidez in the tax suit. The Tax Code requires only that a plaintiff initiating a suit to collect delinquent taxes allege that the defendant owns the property. *Id.* § 34.43 (Vernon 2008). And a "taxing unit filing suit to foreclose a tax lien on real property shall join other taxing units that have claims for delinquent taxes against all or part of the same property."[10]*See id.* §§ 34.43, 34.44 (Vernon 2008).

---

[9] Section 32.05 also provides that a property owners' association is not a necessary party to an action to enforce the collection of a delinquent tax against property unless, at the time the action is commenced, notice of the lien in a liquidated amount is evidenced by a sworn instrument duly executed by an authorized person and recorded with the clerk of the county in which the property is located. TEX. TAX CODE ANN.§ 32.05(d).

[10] We note that the Tax Code provision related to tax sales for personal property requires the collector, after a seizure of personal property, to "make a reasonable inquiry to determine the identity and to ascertain the address of any person having an interest in the property other than the person against whom the tax warrant is issued," and it further requires the peace officer to "deliver as soon as possible a written notice stating the time and place of the sale and briefly describing the property seized to the person against whom the warrant is issued and to any other

18

Nevertheless, Texas courts have stated, at least generally, that"a lienholder must be joined in a delinquent tax suit in order to be bound by it." *Mem'l Park Med. Ctr., Inc. v. River Bend Dev. Group, L.P.*, 264 S.W.3d 810, 814 (Tex. App.—Eastland 2008, no pet.); *see also Jordan v. Bustamante*, 158 S.W.3d 29, 38 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (stating that because State and IRS, both of which had tax liens against subject property, were not joined in first tax suit, their lien interests were not disposed and property remained encumbered by those tax liens); *Murphee Prop. Holdings, Ltd. v. Sunbelt Sav. Ass'n of Tex.*, 817 S.W.2d 850, 852 (Tex. App.—Houston [1st Dist.] 1991, no writ) ("An unbroken line of decisions by Texas Courts, dealing with a variety of statutes, has uniformly held that a lienholder must be joined as a party in a suit to enforce a tax lien, and that any judgment rendered absent the joinder of such a lienholder is defective in that it does not dispose of the rights of all of the parties interested in the property."); *Loper v. Meshaw Lumber Co.*, 104 S.W.2d 597, 599–600 (Tex.Civ.App.—Eastland 1937, writ dism'd) ("A judgment in a tax suit is not void because all parties who own an interest in the property are not made parties. Such judgment foreclosing the tax lien is good as against the parties in interest joined in the suit, and parties not joined are not bound by any such judgment."); *First State*

person having an interest in the property whose name and address the collector provided to the peace officer." TEX. TAX. CODE ANN.§ 33.25 (Vernon 2008). There does not appear to be any express companion statutory provision regarding tax sales of real property.

*Bank-Keene v. Metroplex Petroleum Inc.*, 155 F.3d 732, 737(5th Cir. 1998) (stating that because FDIC, which held lien on property, was not made party to prior tax foreclosure suit, "its lien interest was not disposed of" and purchasers took property subject to FDIC's lien).[11]

Moreover, we note that the Tax Code provides that,

> The deed vests good and perfect title in the purchaser or the purchaser's assigns to the interest owned by the defendant in the property subject to the foreclosure, including the defendant's right to the use and possession of the property, subject only to the defendant's right of redemption, the terms of a recorded restrictive covenant running with the land that was recorded before January 1 of the year in which the tax lien on the property arose, a recorded lien that arose under that restrictive covenant that was not extinguished in the judgment foreclosing the tax lien, and each valid easement of record as of the date of the sale that was recorded before January 1 of the year the tax lien arose. The deed may be impeached only for fraud.

TEX. TAX CODE ANN. § 34.01(n).

---

[11] We note that the Tax Code provides that "[i]f, in a suit to collect a delinquent tax, a court renders a judgment for foreclosure of a tax lien on behalf of a taxing unit, any taxing unit that was a party to the judgment may file a petition to vacate the judgment" for, among other things, "failure to join a person needed for just adjudication under the Texas Rules of Civil Procedure, including a taxing unit required to be joined under Section 33.44(a)," and "failure to serve a person needed for just adjudication under the Texas Rules of Civil Procedure, including a taxing unit required to be joined under Section 33.44(a)." TEX. TAX CODE ANN.§ 33.56 (Vernon 2008).

Additionally, the Tax Code requires that a person challenging the validity of a tax sale deposit certain funds into the registry of the court,[12] bring any such action within a limitations period, and further provides,

> The purchaser may conclusively presume that the tax sale was valid and shall have full title to the property free and clear of the right, title, and interest of any person that arose before the tax sale, subject only to recorded restrictive covenants and valid easements of record set forth in Section 34.01(n) and subject to applicable rights of redemption.

*Id.* § 34.08 (Vernon 2008).

Having considered the above statutes and cases,[13] we conclude that the summary-judgment record does not address critical fact issues concerning notice and filing that are necessary for us determine whether Oyervidez, as a matter of law, was entitled to foreclosure of his liens upon Kothari's property. Accordingly, we hold that the trial court erred in granting Oyervidez summary judgment.

We sustain Kothari's first two issues.[14]

## Conclusion

---

[12] The County argues that the trial court's summary judgment must be reversed because there is no evidence that Oyervidez deposited the necessary funds into the registry of the trial court. However, this issue was not raised in the trial court and, because we reverse the summary judgment on other grounds, we need not address this issue.

[13] In light of our conclusion that the factual record is both conflicting and undeveloped, we cannot directly address the applicability of sections 34.01 and 34.08 to the present case.

[14] Having sustained Kothari's first two issues, we need not address her third and fourth issues.

21

We reverse the judgment of the trial court and remand for proceedings consistent with this opinion.


Terry Jennings
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Keyes.