**Affirmed and Memorandum Opinion filed April 6, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-21-00404-CV

---

### KHERA INTEREST INC., Appellant

### V.

### WILMINGTON TRUST NATIONAL ASSOCIATION NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF THE MFRA TRUST 2015-1, Appellee

---

**On Appeal from the 151st District Court
Harris County, Texas
Trial Court Cause No. 2020-11448**

---

### MEMORANDUM OPINION

Appellant Khera Interest, Inc. ("Khera") appeals a summary judgment granted in favor of appellee Wilmington Trust National Association not in its individual capacity but solely as trustee of the MFRA Trust 2015-1 ("Wilmington"). In three issues, Khera argues the trial court erred by (1) entering a final judgment that did not dispose of all claims and all parties; (2) granting a declaratory judgment to Wilmington's relating to the superiority of title, and

because this declaratory relief sought is duplicative of Wilmington's judicial foreclosure action; and (3) denying Khera's motion to compel discovery and failing to overrule Wilmington's discovery objections. We affirm.

## I. BACKGROUND

On February 19, 2020, Wilmington filed a lawsuit against Bonita Hicks ("Hicks") and Khera, asserting a claim for breach of contract against Hicks and a cause of action for judicial foreclosure on a lien against Hicks and Khera. Wilmington alleged that Hicks executed a note and deed of trust using the property as collateral for the indebtedness. Wilmington subsequently became the holder of the mortgage, and Hicks failed to pay the mortgage in full. Wilmington then filed this lawsuit to foreclose on the property, which it alleged was currently owned by Khera after Khera purchased the property at a foreclosure sale conducted by the homeowner's association after Hicks defaulted on payment of association dues.

On October 29, 2020, Wilmington filed its first amended petition, adding a cause of action against Khera to quiet title. Wilmington alleged that Khera "is the current owner of the Property . . . ." As to its breach-of-contract claim against Hicks, Wilmington's live pleading stated that "[b]ecause of a material breach of the Loan Agreement, [Wilmington] seeks judgment allowing a non-judicial foreclosure pursuant to [Texas Property Code] § 51.002, and the terms of the Loan Agreement with respect to all Defendants who are obligors of the Loan Agreement or acquired the Property subject to the Defendant's debts." *See* Tex. Prop. Code Ann. § 51.002 (titled "Sale of Real Property Under Contract Lien"). As to its claims for judicial foreclosure, Wilmington alleged that a note was made to acquire the property or refinance a debt against the property; Hicks executed and delivered a deed of trust conveying the property in trust as collateral to secure payment of the loan; the note and deed of trust remain unpaid; "Khera's ownership of the Property

is subject to payment in full of Wilmington's lien"; and neither defendant had tendered payoff of the note and deed of trust. As to its quiet-title claim against Khera, Wilmington alleged that "[p]ursuant to Section 9.12 of HOA's restrictions and Declarations, the lien of the assessments shall be subordinate to the lien of any mortgagee, [and] Khera's interest was subordinate to [Wilmington's] superior first lien." Thus, Wilmington argued, it is "entitled to the equitable determination that [Wilmington] holds superior clear title to the Property and that Khera's interest is subordinate to [Wilmington's] interest." In relevant part, Wilmington sought "at least $150,154.85 in damages" "[b]ased on Defendant's breach of her obligations under the Loan Agreement."

Wilmington filed a motion for default judgment as to Hicks.[1] On October 30, 2020, the trial court entered an interlocutory default judgment against Hicks, awarding Wilmington with a judgment allowing judicial and non-judicial foreclosure of its lien on the property. *See id.* The order further provided that "[t]he amount owed under the Loan Agreement at issue is $150,154.85 as of February 26, 2020."

On December 7, 2020, Khera filed a counter-petition against Wilmington, asserting a claim for quantum meruit and requesting a declaratory judgment. Khera sought declarations that the deed of trust was unenforceable as to Khera; that Wilmington had no legal, possessory, or any other right to the subject property; and that Khera held title to the property free and clear of any liens or other encumbrances.

On December 14, 2020, the trial court granted Wilmington's motion for summary judgment as to Khera's claims, explicitly incorporating the November

---

[1] The motion for default judgment does not appear in the record on appeal. It is unclear when Wilmington filed the motion.

16, 2020 interlocutory default judgment as to Hicks. The trial court awarded Wilmington $10,925.69 in damages.

On December 17, 2020, Wilmington filed a motion to vacate "and/or" reconsider the order granting its summary judgment motion against Khera, averring that the payoff amount of the loan agreement awarded as damages in the final judgment was inaccurate. Wilmington argued the amount awarded in the order was the amount owed to bring the loan current and that the amount owed under the note was $150,154.85. The trial court granted the motion on December 28, 2020, ordering that its order from December 14, 2020, "vacated and set aside."

On January 27, 2021, Khera filed a motion to compel discovery, seeking, in relevant part, documents related to the execution of the note, deed of trust, and the servicing of the mortgage. Khera argued the documents sought "are highly relevant to the causes of action asserted by [Wilmington] and are likely to yield evidence that [Khera] could use in opposition to the currently pending summary judgment motion filed by [Wilmington]." In particular, Khera sought documents concerning the amount and balance of the loan secured by the deed of trust, which Khera argued was relevant as to the damages sought by Wilmington.

On February 5, 2021, Wilmington filed a second amended petition, seeking (1) declaratory relief that Wilmington's lien interest in the property superior to that of Khera's, and (2) judicial foreclosure of its lien on the property against Hicks and Khera. Wilmington's second amended petition did not include its previously asserted claims for breach of contract against Hicks or to quiet title against Wilmington. The trial court denied Khera's motion to compel discovery on February 8, 2021.

On April 26, 2021, Wilmington filed a second amended hybrid motion for summary judgment as to Khera, arguing that Wilmington was entitled to summary

4

judgment on its declaratory judgment claim and that Khera's claim for declaratory judgment failed because "Khera has no evidence to support its claim that [Wilmington's] deed of trust is unenforceable, no evidence that [Wilmington] has no legal right to the subject property[,] and no evidence to support [Khera's] claim that it holds free and clear fee simple title to the Property." Wilmington also moved for summary judgment on Khera's quantum meruit claim, arguing that: Khera did not have "clean hands," because Khera purchased the property at a foreclosure; quantum meruit was inapplicable to the facts of the case; and Khera provided no evidence of the elements of its quantum meruit claim. Wilmington attached an affidavit of Thomas O'Connell, a Senior Vice President of the mortgage servicer for Wilmington, Planet Home Lending, LLC, testifying to the creation of the note and the deed of trust with Hicks and Hicks' failure to make payments. O'Connell's affidavit further attested that true and correct copies were attached of the payment history on the note; the payoff statement; the note; the deed of trust; a corporate assignment of the deed of trust; the homeowners' association covenants, conditions, restrictions, and easements; and other original documents concerning the note and deed of trust.

On May 10, 2021, Khera filed its own motion for partial summary judgment as to Wilmington's declaratory-judgment claim. Khera argued that Wilmington's second amended petition replaced its quiet-title action with a declaratory-judgment action, and that a declaratory-judgment action was improper because the trespass-to-try-title statute governs the parties' dispute. *See id.* § 22.001(a) ("A trespass to try title action is the method of determining title to lands, tenements, or other real property."). Khera further argued that Wilmington's declaratory-judgment action was improper because it was duplicative of Wilmington's claim for judicial foreclosure. Wilmington filed a reply to Khera's motion for summary judgment,

5

arguing that Wilmington "is not seeking a foreclosure judgment as to . . . Khera" and that Wilmington's motion "moves solely on its claim for declaratory judgment."

On May 25, 2021, the trial court signed an order, granting Wilmington's second amended motion for summary judgment. The order declared that "Khera's title is subject to [Wilmington's] valid first lien mortgage" and dismissed Khera's counterclaims with prejudice. The order did not award Wilmington any damages. This appeal followed.

## II.    FINAL JUDGMENT

In its first issue, Khera argues that the trial court erred when it entered its final judgment because the judgment did not dispose of all claims and parties. Khera argues that Wilmington's second amended motion for summary judgment only addressed Wilmington's claim for declaratory judgment against Khera, but it did not address Hicks or Wilmington's claim for judicial foreclosure.

### A.    JURISDICTION

This court's jurisdiction is established exclusively by constitutional and statutory enactments. *See* Tex. Const. art. V, § 6; Tex. Gov't Code Ann. § 22.220. Unless one of the sources of our authority specifically enables an interlocutory appeal, we only have jurisdiction over an appeal taken from a final judgment. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 51.012, 51.014; *N.E. Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 895 (Tex. 1966).

### B.    APPLICABLE LAW

A judgment issued without a conventional trial is final for purposes of appeal if and only if it actually disposes of all claims and parties then before the court, regardless of its language, or it states with unmistakable clarity that it is a

final judgment as to all claims and parties. *See Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 192–93 (Tex. 2001). Because a final judgment does not have to be in any particular form, deciding whether a judicial decree is a final judgment must be determined from its language and the record in the case. *Id.* at 195.

If the judgment does not dispose of every pending claim but is "clearly and unequivocally" final on its face, the judgment is not interlocutory merely because the record does not afford a legal basis for the adjudication. *Id.* at 206. Rather, the judgment is final but erroneous, and it must be reversed. *Id.* Finally, the general rule is that an interlocutory judgment becomes final when it merges into the final judgment disposing of the entire case. *See Webb v. Jorns*, 488 S.W.2d 407, 409 (Tex. 1972); *see, e.g.*, *McLernon v. Dynegy, Inc.*, 347 S.W.3d 315, 322 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("Instead, to the extent that the two previous interlocutory orders contained language ordering recovery of a sum certain, they would merge into the January 8, 2009 order to constitute a final, appealable judgment."); *Douglas v. Am. Title Co.*, 196 S.W.3d 876, 877, 879 n.6 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ("[T]he vexatious-litigant order merged into the final judgment and is appealable."); *see also Hyundai Motor Co. v. Alvarado*, 892 S.W.2d 853, 855 (Tex. 1995) (per curiam) (noting that a partial summary judgment becomes final upon disposition of other issues in case).

## C.    ANALYSIS

Khera argues the trial court's order granting Wilmington's motion for summary judgment did not dispose of all claims between the parties because, at the time the summary judgment motion was filed, Wilmington's live pleading "included causes of action for judicial foreclosure and declaratory judgment." Khera further argues that Wilmington's motion "was filed only as to its declaratory judgment cause of action and the counterclaims—it did not address the judicial

7

foreclosure cause of action nor did it address . . . Hicks." Accordingly, Khera argues "there was no judicial foreclosure judgment at the time the 'final order' on 5/25/21 . . . ; it was a live and unresolved claim."

Here, Wilmington first obtained a default judgment against Hicks awarding it judicial and non-judicial foreclosure on the property. Wilmington then filed a motion for summary judgment against Khera, which the trial court granted but later vacated based on Wilmington's request. In its motion to vacate, Wilmington did not seek to modify or vacate the interlocutory order against Hicks granting judicial and non-judicial foreclosure of the property. The trial court granted the motion to vacate and, in its October 30, 2020 order, did not vacate the default partial judgment granting Wilmington judicial foreclosure. Stated differently, the trial court did not vacate its previous disposition of Wilmington's claim for judicial foreclosure. Thus, the trial court's interlocutory order disposing of Wilmington's judicial foreclosure claim remained intact following the granting of Wilmington's motion to vacate.

Subsequently, Wilmington filed a second amended petition that omitted the prior claims for breach of contract against Hicks and to quiet title against Khera. Wilmington then filed a second amended motion for summary judgment against Khera, seeking summary judgment on its remaining live claim against Khera (declaratory judgment) and on Khera's counterclaims. The trial court signed an order granting Wilmington's second amended summary judgment motion, and the interlocutory order merged with the summary judgment order creating a final judgment. *See Webb*, 488 S.W.2d at 409; *McLernon*, 347 S.W.3d at 322. Accordingly, we reject Khera's argument that we lack jurisdiction because the trial court did not dispose of Wilmington's claims against Hicks.

Khera also argues that the judgment was not final because Wilmington did

8

not serve Hicks with its second amended petition. If an amended pleading asserts a new cause of action distinct from that stated in the original pleading or seeks a more onerous judgment against the defendant than it prayed for in the original pleading, then new service of process is essential to enable the plaintiff to proceed to judgment. *Fidelity & Guar. Ins. v. Drewery Const. Co.*, 186 S.W.3d 571, 574 (Tex. 2006) (per curiam); *AAMCO Transmissions, Inc. v. Bova*, 484 S.W.3d 520, 523 (Tex. App.—Houston [1st Dist.] 2016, no pet.). Here, Wilmington's live pleading did not assert a new cause of action or seek any other relief against Hicks than its previous pleading on which it obtained the default judgment against Hicks. Thus, new service of process on Hicks was not essential for Wilmington to proceed to judgment against Khera on its second amended pleading. *See Fidelity & Guar. Ins.*, 186 S.W.3d at 574; *AAMCO Transmissions, Inc.*, 484 S.W.3d at 523.

We overrule Khera's first issue.

### III.   DECLARATORY JUDGMENT

In its second issue, Khera argues that the trial court erred in granting a declaratory judgment to Wilmington because the Uniform Declaratory Judgment Act does not apply to an action relating to the superiority of title; averring that Texas Property Code § 22.001 requires that a trespass-to-try-title action is the proper method of determining title to real property, and further, that the declaratory relief sought is duplicative of Wilmington's judicial-foreclosure action.

### A.   APPLICABLE LAW & STANDARD OF REVIEW

#### 1. Trespass To Try Title

"By statute, a trespass-to-try-title action 'is the method of determining title to lands.'" *Brumley v. McDuff*, 616 S.W.3d 826, 831–32 (Tex. 2021) (quoting Tex. Prop. Code Ann. § 22.001(a)). "Although related claims exist to determine

narrower questions of possession, a cloud on a title, or a non-possessory interest, a trespass-to-try-title action is the exclusive remedy for resolving overarching claims to legal title." *Id.* at 832 (footnotes omitted).

> In a trespass-to-try-title action, a plaintiff may prove legal title by establishing: (1) a regular chain of title conveyances from the sovereign to the plaintiff; (2) a superior title to that of the defendant out of a common source; (3) title by limitations (i.e., adverse possession); or (4) possession that has not been abandoned.

*Id.* The substance of the plaintiff's pleadings determines whether a claim sounds in trespass to try title. *Id.* "A suit that seeks to resolve a title dispute is, in effect, an action in trespass to try title, whatever its form." *Id.* at 836.

In recent years, the Texas Supreme Court has addressed distinctions between the various causes of action for settling questions related to title. *See Brumley*, 616 S.W.3d at 832–33; *Lance v. Robinson*, 543 S.W.3d 723, 735–37 (Tex. 2018). In *Lance*, the Court held the claimants could bring a declaratory-judgment action to establish rights to an easement, as opposed to the trespass-to-try-title statute, noting that an easement is a nonpossessory interest and the claimants did not assert any ownership or possessory interest in the disputed area. *Lance*, 543 S.W.3d at 736–37. The court explained that the trespass-to-try-title statute is the proper procedural vehicle "when the claimant is seeking to establish or obtain the claimant's *ownership or possessory right* in the land at issue." *Id.* at 736 (emphasis added). Thus, if the determination sought only *prospectively* implicates title, then the dispute does not have to be brought as a trespass-to-try-title action. *See, e.g.*, *Chase Home Fin., L.L.C. v. Cal W. Reconveyance Corp.*, 309 S.W.3d 619, 633–34 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding declaratory relief was available to determine validity of competing instruments and resolving dispute between two purported lienholders); *Red Rock Props. 2005, Ltd. v. Chase Home Fin., L.L.C*, No. 14-08-00352-CV, 2009 WL 1795037, at *5–6 (Tex. App.—

Houston [14th Dist.] June 25, 2009, no pet.) (mem. op.) (recognizing declaratory-judgment action in that case over lien superiority prospectively affected title).

## 2. Declaratory Judgment

"A declaratory-judgment action 'provides an efficient vehicle for parties to seek a declaration of rights under certain instruments.'" *Sustainable Tex. Oyster Res. Mgmt., L.L.C. v. Hanna Reef, Inc.*, 623 S.W.3d 851, 864 (Tex. App.—Houston [1st Dist.] 2020, pet. denied) (quoting *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004)); *see Allstate Ins. v. Irwin*, 627 S.W.3d 263, 269 (Tex. 2021) ("The Uniform Declaratory Judgments Act empowers Texas courts 'to declare rights, status, and other legal relations whether or not further relief is or could be claimed.'" (quoting Tex. Civ. Prac. & Rem. Code Ann. § 37.003(a))). "Under its terms, any 'person interested' under a written contract 'may have determined any question of construction or validity' arising under that contract and 'obtain a declaration of rights, status, or other legal relations thereunder.'" *Allstate Ins.*, 627 S.W.3d at 269 (citing Tex. Civ. Prac. & Rem. Code Ann § 37.004(a)). "The Act's stated 'purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered.'" *Id.* (citing Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b)). Courts have determined that a declaration concerning lien validity and superiority are proper for declaratory relief. *Cf. Lance*, 543 S.W.3d at 736; *see I-10 Colony, Inc. v. Lee*, 393 S.W.3d 467, 475 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *see, e.g., Chase Home Fin. L.L.C.*, 309 S.W.3d at 633–34; *Red Rock Props. 2005, Ltd.*, 2009 WL 1795037, at *5–6.

## 3. Deeds of Trust & Liens

"The purpose of a deed of trust is to secure a lender the repayment of a borrower's debt." *Fin. Freedom Senior Funding Corp. v. Horrocks*, 294 S.W.3d

749, 755 (Tex. App.—Houston [14th Dist.] 2009, no pet.). "To accomplish this purpose, a deed of trust creates only a lien on property and does not constitute a conveyance of the property." *Id.*

Generally, different liens on the same property have priority according to the time of their creation. *Red Rock Props. 2005, Ltd.*, 2009 WL 1795037, at *3. This rule is known as first in time is first in right. *Id.*

It is well settled law in Texas that a valid foreclosure on a lien filed first in time (sometimes referred to as a "superior" lien) extinguishes a later-filed lien (sometimes referred to as "inferior" or "subordinate" lien) if there are insufficient excess proceeds from the foreclosure sale to satisfy the later-filed lien. *I-10 Colony, Inc.*, 393 S.W.3d at 472–73; *see, e.g.*, *Diversified Mortg. Investors v. Lloyd D. Blaylock Gen. Contractor, Inc.*, 576 S.W.2d 794, 808 (Tex. 1978) (op. on reh'g); *Kothari v. Oyervidez*, 373 S.W.3d 801, 807 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *Elbar Invs., Inc. v. Wilkinson,* No. 14-99-00297-CV, 2003 WL 22176624, at *2 (Tex. App.—Houston [14th Dist.] Sept. 23, 2003, pet. denied) (mem. op.). Stated differently, the purchaser at the foreclosure sale takes title free from the subordinate lien. *Nat'l W. Life Ins. v. Acreman*, 425 S.W.2d 815, 817–18 (Tex. 1968); *I-10 Colony, Inc.*, 393 S.W.3d at 472–73; *Poston v. Wachovia Mortg. Corp.*, No. 14–11–00485–CV, 2012 WL 1606340, at *2 (Tex. App.— Houston [14th Dist.] May 8, 2012, pet. denied) (mem. op.). Conversely, with few exceptions, foreclosure on a subordinate lien will not extinguish a superior lien and the purchaser at the foreclosure sale will take subject to the superior lien. *I-10 Colony, Inc.*, 393 S.W.3d at 472–73.

## 4. Analysis

Here, Wilmington's live petition alleged that it sought "declaratory relief that [Khera's] interest in the Property, if any, is subject to the first mortgage lien

Deed of Trust to which [Wilmington] is the beneficiary." Wilmington's petition further alleged that it "is entitled to the equitable determination that [Wilmington] holds superior clear title to the Property and that Khera's interest is subordinate to [Wilmington's] interest" and that it "seeks a Declaratory Judgment from this Court declaring Khera's interest in the Property, if any, is subordinate and subject to [Wilmington's] Deed of Trust." The trial court's order provides that "it is therefore established and declared that Defendant Khera's title is subject to [Wilmington's] valid first mortgage lien."

Wilmington's claim against Khera sought to establish that Khera's ownership of the property was subject to Wilmington's lien but did not seek to establish possession or ownership over the property; rather, the claim prospectively implicated title by determining that Khera's ownership was subject to Wilmington's lien on the property. *See Lance*, 543 S.W.3d at 736; *I-10 Colony, Inc.*, 393 S.W.3d at 475; *Chase Home Fin. L.L.C.*, 309 S.W.3d at 633–34; *see also Fin. Freedom Senior Funding Corp. v. Horrocks*, 294 S.W.3d 749, 755–56 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("[A] deed of trust creates only a lien on property and does not constitute a conveyance of the property."). Accordingly, we conclude that Wilmington did not need to assert this claim under the trespass-to-try-title statute. *See Lance*, 543 S.W.3d at 736.

We note that Wilmington's live petition sought an equitable determination that Wilmington holds superior title to the property. This determination is subject to the trespass to try title statute. However, the trial did not enter a declaration providing that Wilmington holds superior title, and the other declarations sought were properly brought under the Uniform Declaratory Judgment Act.

Finally, Khera argues that "[i]t is improper to bring a claim for declaratory judgment when it is merely duplicative of claims already before the court."

13

However, the authority Khera cites in support of its argument does not stand for this proposition. *See* Tex. R. App. P. 48.1(i). Instead, the authorities cited stand for the proposition that a declaratory judgment action may not be used to obtain attorney's fees when there is another cause of action available that does not provide for the recovery of attorney's fees. *See MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 670 (Tex. 2009) ("But when a claim for declaratory relief is merely tacked onto a standard suit based on a matured breach of contract, allowing fees under Chapter 37 would frustrate the limits Chapter 38 imposes on such fee recoveries."); *Wells Fargo Bank, N.A. v. Robinson*, 391 S.W.3d 590, 595 (Tex. App.—Dallas 2012, no pet.) ("Furthermore, Robinson's request for declaratory relief is merely duplicative of his claims for wrongful foreclosure and breach of contract. A plaintiff may not use the declaratory judgment act to recover attorney's fees that are not otherwise available by simply seeking a declaratory judgment on issues already before the court as part of other claims asserted."). Khera does not argue that the trial court erred when it awarded attorney's fees to Wilmington. *See* Tex. R. App. P. 48.1(i). Furthermore, contrary to Khera's argument, the Supreme Court of Texas has stated that "the existence of another adequate remedy does not bar the right to maintain an action for declaratory judgment . . . ." *MBM Fin. Corp.*, 292 S.W.3d at 669 (quoting *Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709, 714 (1945)).

We overrule Khera's second issue.

### IV.   MOTION TO COMPEL DISCOVERY

In its third issue, Khera argues the trial court erred in denying its motion to compel discovery and by "not overruling" Wilmington's discovery objections.

We review the trial court's ruling on a motion to compel for an abuse of discretion. *See Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 661 (Tex. 2009). A

trial court abuses its discretion when it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011).

On appeal, Khera argues that, subsequent to the filing of Wilmington's amended petition, the trial court erred when it denied its motion to compel discovery as to items concerning evidence of the damages awarded to Wilmington in the interlocutory order. The only live cause of action pled in Wilmington's amended petition was for declaratory judgment concerning the superiority of Wilmington's lien vis-a-vis Khera's ownership interest in the property.[2] Thus, the evidence concerning damages and the amount owed under the note is not relevant to Wilmington's claim for declaratory relief because Wilmington did not seek, nor was it awarded, damages based on the balance of the loan. Instead, Wilmington sought and obtained its only request for relief as to Khera: a declaration that "Khera's title is subject to [Wilmington's] valid first mortgage lien." Accordingly, we cannot conclude that the trial court abused its discretion when it denied Khera's motion to compel discovery.

Khera also argues that the trial court erred by not overruling Wilmington's objections to Khera's discovery requests. However, the trial court did not rule on Wilmington's objections, and Khera did not object to the trial court's failure to rule. *See* Tex. R. App. P. 33.1(a). Furthermore, as previously concluded, the trial court did not abuse its discretion in denying the motion to compel because the items requested were not relevant.

We overrule Khera's third issue.

---

[2] Khera also filed a second motion to compel and a motion for discovery sanctions, but Khera did not obtain a ruling from the trial court on those motions. *See* Tex. R. App. P. 33.1(a).

15

## V.    CONCLUSION

We affirm the trial court's judgment.


/s/    Margaret "Meg" Poissant
Justice

Panel consists of Justices Zimmerer, Spain, and Poissant. (Spain, J., concurring without opinion).

16