Carlyn P. BAILEY–MASON, Appellant,

v.

Rae Black MASON, Appellee.

No. 05–07–01257–CV.

Court of Appeals of Texas, Dallas.

Dec. 10, 2008.

Stanley R. Mays, Bailey & Mays, Dallas, TX, for Appellant.

Walter L. Irvin, Dallas, TX, for Appellee.

Before Justices BRIDGES, FITZGERALD, and LANG.

## OPINION

Opinion by Justice FITZGERALD.

This is a suit for the partition of real estate, specifically a residence in Duncanville, Texas (the "Residence"). The trial court concluded appellee Rae Black Mason ("Rae") owned one half of the Residence and that the two children of appellant Carlyn P. Bailey–Mason ("Carlyn") each owned one quarter of the Residence. The trial court's judgment found the Residence was not susceptible to fair and equitable partition; the court ordered the Residence sold and the net proceeds distributed to the owners according to their ownership interests. In a single issue, Carlyn contends the trial court erred by rendering judgment that the Residence should be partitioned. We affirm the trial court's judgment.

### BACKGROUND

Edward James Mason ("Edward") married Rae in 1951; the couple separated in 1978. In 1979, Edward bought the Residence. That same year, Edward initiated divorce proceedings. He listed the Residence on his inventory of community property. The divorce was eventually dismissed for want of prosecution.

Edward and Carlyn began living together in 1989, and they were ceremonially married in Las Vegas in 1991. They had two children together (the "Children"). In 1998 or 1999, Husband deeded the Residence to the Children.

In October 1999, Edward died. Both Rae and Carlyn alleged surviving-spouse status and sought to be appointed administrator of Edward's estate. During the pendency of probate proceedings, Rae filed and later non-suited a separate lawsuit for partition of the Residence. Subsequently, after trial in the probate court, the trial court found Rae was the surviving spouse because Edward and Rae were never divorced.

Rae then brought this second suit for partition.[1] She sued Carlyn as managing conservator and next friend of the minor Children. The case was tried to the court. The court found Rae owned half of the Residence and that each of the Children owned one quarter of the Residence. Because the Residence was not susceptible to in-kind partition, the trial court ordered it sold and the net proceeds distributed to Rae and the two minor Children according to their fractional ownership interests. At Carlyn's request, the trial court issued findings of fact and conclusions of law and supplemental findings of fact and conclusions of law. Carlyn appeals.

### OWNERSHIP OF THE RESIDENCE

Carlyn contends the trial court erred when it ordered the Residence partitioned and sold. Within this broad framework, she makes four specific arguments.[2] We address these arguments in turn.

1. Rae died during the pendency of this action below. Her executor has pursued her claim on behalf of Rae's estate.

2. We note that Carlyn's arguments address issues of ownership of the Residence. De-

spite the wording of her issue, she does not challenge the trial court's conclusion that the Residence is not susceptible to partition in kind. Nor does she challenge the conclusion

## Judicial Estoppel

■ Carlyn argues first that Rae is judicially estopped from claiming an ownership interest in the Residence because, in a deposition taken during the first suit for partition, Rae testified she had no ownership interest in the Residence.[3]

■ The doctrine of judicial estoppel is designed to protect the integrity of the judicial process by preventing a party from "playing fast and loose with the courts" to suit his own purposes. *Webb v. City of Dallas,* 211 S.W.3d 808, 820 (Tex.App.–Dallas 2006, pet. denied). Specifically, judicial estoppel bars a party from successfully maintaining a position in one action and then maintaining an inconsistent position in a subsequent action. *Pleasant Glade Assembly of God v. Schubert,* 264 S.W.3d 1, 6 (Tex.2008); *Turner v. PV Intern. Corp.,* 765 S.W.2d 455, 461–62 (Tex.App.–Dallas 1988), *writ denied* 778 S.W.2d 865 (Tex.1989) (per curiam). Stated differently, if a party prevails in one action after asserting the truth of one version of the facts, he cannot attempt to prevail in a later proceeding by asserting those same facts are not true. Indeed, pursuant to this doctrine, a fact admitted by a prevailing party in a judicial proceeding is established as a matter of law; the admitting party may not in a second proceeding dispute the admission or introduce evidence contrary to it. *See OAIC Commercial Assets, L.L.C. v. Stonegate Village, L.P.,* 234 S.W.3d 726, 742 (Tex.App.–Dallas 2007, pet. denied). Judicial estoppel is not strictly speaking estoppel; it is actually a rule of procedure that is based on justice and sound public policy. *Schubert,* 264 S.W.3d at 6. It operates to prevent the use of intentional self-contradiction as a means of obtaining unfair advantage. *Id.*

In this case, Carlyn argues Rae should be judicially estopped from claiming an ownership interest in the Residence because her deposition testimony in the first partition suit asserted she had no such interest. But Carlyn's judicial estoppel argument will only succeed in this second partition suit if Rae was successful in the first partition proceeding based on her deposition testimony. *See Turner,* 765 S.W.2d at 462 (judicial estoppel not operative when party did not successfully maintain its position in earlier action where statement was made). Rae did *not* successfully maintain the no-ownership position in the first suit. Indeed, the record is clear that Rae non-suited the first partition suit; no judgment was entered. Accordingly, the deposition testimony in that

that the Residence must be sold if the trial court's ownership conclusions are affirmed.

3. The deposition begins with a statement by Carlyn's attorney, noting that the subject of the deposition was the Residence. This exchange followed between that attorney and Rae:

Q. ... Do you understand that?
A. Uh-huh.
Q. Now, can you tell me, when did you purchase that property?
A. Property?
Q. At 820 Rock Canyon in Duncanville. You have said you have an ownership interest in that property. When did you obtain your ownership in that property?
A. Huh-uh.
Q. You don't have an ownership interest in the property on Rock Canyon?
A. No.
The deposition was immediately adjourned.

The record does not explain the circumstances under which Rae testified in this peculiar manner. This was, after all, a lawsuit that she brought to partition the Residence. Her pleadings must have taken the position that she did have an ownership interest in the Residence, and the deposition testimony was clearly contrary to her interest in the suit. Regardless, our resolution of the judicial estoppel does not require us to pursue answers to the questions raised by this deposition.

earlier suit does not bar Rae from pressing her ownership claim in this suit. *See id.*

### The Residence as Edward's Sole–Management Community Property

▮ Next, Carlyn argues the trial court should have set aside the initial judgment and granted a new trial, because the issue of "sole-management" community property was tried by consent. The family code provides that, in certain circumstances, a spouse can have the right to "sole management, control, and disposition of the community property that the spouse would have owned if single." Tex. Fam. Code Ann. § 3.102(a) (Vernon 2006) [hereinafter, the issue of "sole-management community property"]. Carlyn did not plead this theory and did not raise it in any form until her motion for new trial. But she argues the evidence conclusively established the elements of sole-management community property as a matter of law. We review the trial court's denial of a motion for new trial for abuse of discretion. *In re R.R.*, 209 S.W.3d 112, 114 (Tex.2006).

▮ An unpleaded issue may be deemed tried by consent only when evidence on the issue is developed under circumstances indicating both parties understood the issue was in the case, and the other party failed to make an appropriate complaint. *Case Corp. v. Hi–Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 772 (Tex.App.–Dallas 2005, pet. denied). The trial court has broad discretion in determining whether an unpleaded issue was tried by consent. *Id.* To determine whether an issue was tried by consent, the reviewing court must examine the record, not for evidence of the issue, but rather for evidence of *trial* of the issue. *Johnson v. Oliver*, 250 S.W.3d 182, 186 (Tex.App.–Dallas 2008, no pet.).

▮ Our review of the record in this case does not yield evidence the issue of sole-management was tried. Carlyn did not refer to sole-management community property, either expressly or implicitly, at any time in the trial record. The issue was not mentioned in any pretrial motions; nor was it mentioned during opening statements, presentation of evidence, or closing arguments. Indeed, the record is clear that counsel for Carlyn did not research and adopt the theory of sole-management community property until after the trial was over. The evidence pointed to by Rae as establishing Edward's purported right to sole-management of the Residence (e.g., how and when Edward purchased the Residence, who lived there when, Edward and Rae's separation) was also relevant to the overriding issue of ownership of the Residence. *See In re J.M.*, 156 S.W.3d 696, 705 (Tex.App.–Dallas 2005, no pet.) (trial by consent not applicable when evidence of unpleaded matter is relevant to pleaded issues because it would not be calculated to elicit objection). Finally, this issue was not submitted—or even offered—to the trial court for determination. An unpleaded issue may be tried by consent, but it still must be submitted to the trier of fact. *In re S.A.P.*, 156 S.W.3d 574, 577 (Tex. 2005) (quoting Tex.R. Civ. P. 279 ("Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived.")). We conclude the trial court did not abuse its discretion when it denied Carlyn's motion for new trial.

### Reimbursement

Carlyn's third argument is made in the alternative. She contends that, if Rae does own one half of the Residence, then the trial court should have ordered Rae to provide the Children reimbursement for

half of the money spent on the Residence from the time of Edward's death until judgment. Carlyn included a claim for reimbursement in her trial court counterclaim on behalf of the Children. The pleading stated simply: "Further, in the alternative, Defendants contend that they are entitled to reimbursement from Plaintiff for improvement to the property." At trial, Carlyn testified she had incurred expenses related to the Residence totaling more than $230,000 between October 1999 and June 2007. Carlyn's brief breaks down that total amount as follows:

| | | |
|---|---|---|
| a. | Utilities ($1,000/month) | $ 90,000.00 |
| b. | Taxes ($8,000.00/year) | 61,333.00 |
| c. | Improvements (Den, damage repair) | 60,000.00 |
| d. | Insurance ($3,500/year) | 26,833.00 |
| | | $238,166.00 |

There was no evidence Rae had contributed to the upkeep of the Residence in any manner. The trial court did not include any sum for reimbursement in the judgment. Nor did the trial court's findings of fact and conclusions of law address the reimbursement issue. Carlyn asked for supplemental findings of fact and conclusions of law, including findings specifically related to the reimbursement issue. The trial court did issue supplemental findings, but he did not include any specifically related to the reimbursement claim.

■ Carlyn challenges the trial court's failure to find the reimbursement issue in her favor. Carlyn bore the burden of proof on the claim for reimbursement; she was required to plead and prove entitlement to such relief. *See Hawkins v. McCowan*, 246 S.W.2d 322, 325 (Tex.Civ. App.–Dallas 1952, writ ref'd) (appellant correctly denied recovery for "valuable improvements on the property" when no pleading supported recovery and evidence was insufficient to support contention); *see also Wooley v. West*, 391 S.W.2d 157, 161 (Tex.Civ.App.–Tyler 1965, writ ref'd n.r.e.)

(claim for equitable relief growing out of co-tenancy requires pleading).

■ Our analysis reveals Carlyn's pleading is insufficient to support the entire recovery she seeks. Her pleading sought reimbursement only "for improvement to the property." Thus, her reimbursement claims based on expenditures for utilities, taxes, and insurance must fail. *See Wooley*, 391 S.W.2d at 161.

■ Carlyn did plead for reimbursement based on improvements made to the Residence while she and the Children lived there. Specifically, Carlyn testified she incurred costs totaling $60,000 for improvements to the den and damage repair. We review this portion of Carlyn's claim to determine whether the trial court's failure to find in her favor is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See U.S. Bank, Nat'l Ass'n v. Am. Realty Trust, Inc.*, No. 05–07–00328–CV, 2008 WL 2376979, at *5 (Tex.App.–Dallas June 12, 2008) (citing *Marrs & Smith P'ship v. D.K. Boyd Oil & Gas Co., Inc.*, 223 S.W.3d 1, 13–14 (Tex.App.–El Paso 2005, pet. denied)). A co-tenant who incurs expense for the necessary preservation of property is entitled to reimbursement from her co-tenant. *Wooley*, 391 S.W.2d at 160. But when a co-tenant actually develops the property in some way, any nonjoining co-tenant has no obligation to pay for the improvements. *Perez v. Hernandez*, 658 S.W.2d 697, 701 (Tex.App.–Corpus Christi 1983, no writ); *see also Cox v. Davison*, 397 S.W.2d 200, 201 (Tex.1965) ("Where one cotenant decides to develop a common property, the law raises no obligation binding a nonjoining cotenant to pay a part of the costs of development."). Our review of the record has not located any evidence indicating Carlyn "joined" or consented to any improvements to the Residence. Nor

have we located evidence indicating these improvements were necessary to preservation of the property. We conclude the trial court's failure to find in Carlyn's favor on the reimbursement issue is not so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See U.S. Bank, Nat'l Ass'n v. Am. Realty Trust, Inc.*, 2008 WL 2376979, at *5.

Because Carlyn has failed to plead and prove entitlement to reimbursement in this case, her third argument fails.

### Putative Marriage

 Finally, in her fourth argument, Carlyn contends the trial court should have declared her to be Edward's putative spouse. A putative marriage is one entered into in good faith by at least one party, that is invalid because of an existing impediment on the part of one or both parties. *Cardwell v. Cardwell*, 195 S.W.3d 856, 858 (Tex.App.-Dallas 2006, no pet.). If a court determines a putative marriage exists, then the putative spouse who acted in good faith receives the same rights in property that she would have received were she a lawful spouse. *Id.* In its supplemental findings of fact, the trial court found that Carlyn was unaware that Edward was not divorced from Rae. On that basis, Carlyn argues she should have been awarded one half of the Residence. However, even if we assume (without deciding) that Carlyn was Edward's putative spouse, she would only have a claim to property acquired during the putative marriage. *See* Tex. Fam.Code § 3.002 ("Community property consists of the property, other than separate property, acquired by either spouse during marriage."). Edward acquired the residence in 1979, many years before the ceremonial marriage between Edward and Carlyn. Thus, Carlyn's status as putative wife is irrelevant to the partition of the Residence, and no error by the trial court concerning her status could have caused rendition of an improper judgment. *See* Tex.R.App. P. 44.1(a)(1).

### Conclusion

We have determined Carlyn's arguments concerning ownership of the Residence are without merit. Basic marital-property rules support the trial court's conclusions concerning ownership of the Residence, Carlyn's ultimate issue. Uncontroverted evidence establishes that the Residence was purchased by Edward in 1979. The probate court's ruling establishes Edward was married to Rae at that time. Thus, fundamental community property law dictates that the Residence was community property. *See* Tex. Fam.Code § 3.002. On Edward's death, Rae owned an undivided one-half interest in the Residence. We find no error in the trial court's ruling to that effect. We decide Carlyn's single issue against her, and we affirm the judgment of the trial court.