**Affirmed as Modified; Opinion of September 25, 2012 Withdrawn; Motion for Rehearing Overruled; and Substitute Opinion filed December 28, 2012.**



In The

# Fourteenth Court of Appeals

### NO. 14-10-01051-CV

### I-10 COLONY, INC., Appellant

### V.

### CHAO KUAN LEE, LI YANG LEE, LI HSIANG CHANG, Appellees

**On Appeal from the 151st District Court**
**Harris County, Texas**
**Trial Court Cause No. 1999-51016**

## S U B S T I T U T E   O P I N I O N

We overrule the motion for rehearing, withdraw our opinion dated September 25, 2012, and issue this substitute opinion.

This case involves a dispute over the ownership of and profits derived from a hotel property. In its final judgment, the trial court held that appellee Chao Kuan Lee and Henry Wu, the latter on behalf of appellant I-10 Colony, Inc., each owned an undivided 50 percent interest in the property. The court awarded appellees Chao Kuan and Li Yang Lee damages based on jury findings related to income from the property. The court

additionally ordered I-10 to pay Chao Kuan Lee attorney's fees and prejudgment interest.[1]

In six issues, I-10 contends that the trial court erred in (1) determining property ownership in a declaratory judgment action; (2) awarding attorney's fees in a case involving title to property; (3) determining that Chao Kuan Lee owned 50% of the hotel property; (4) instructing the jury that it should not subtract the cost of certain improvements when calculating property income; (5) instructing the jury that it should not subtract salaries paid to Henry and Emily Wu when calculating property income; and (6) calculating prejudgment interest from a particular date. We reform the judgment concerning the calculation of prejudgment interest and affirm the judgment as so modified.

## I. Background

Chao Kuan Lee and I-10, a company owned by Henry Wu, were equal partners in South Territory Ltd., a partnership formed to own and manage hotel properties. In 1995, the partnership purchased the hotel property that is now the subject of this lawsuit. In 1997, the property was sold to Blue Bonnet Hospitality, Inc. for $2.1 million. To effectuate the sale, South Territory first conveyed a 50 percent interest each to Lee and Wu. Wu then conveyed his interest to I-10, and both Lee and I-10 conveyed their interests to Blue Bonnet. As part of the sale arrangement, Blue Bonnet assumed a loan with Metro Bank. Blue Bonnet also executed separate notes for $150,000 each to Lee and I-10.

Each note states that it "is in equal dignity with the $150,000 note of even date herewith," and each specifically identifies the other. Each of the notes also was secured by a separate deed of trust: one in favor of Lee and one in favor of I-10, each pledging 100% of the property. The deeds of trust each reference and identify the corresponding

---

[1] Li Hsiang Chang nonsuited his claims before the jury trial. This appeal does not address any issues related to Chang's claims. Li Yang Lee was awarded damages based on property income but was not determined to have any rights in the property and was not awarded attorney's fees. No issues raised in this appeal turn on the fact of Li Yang Lee's participation.

note that it is securing. The deeds also describe the duties of the named trustees upon foreclosure, including that the property shall be sold to the highest bidder, "subject to prior liens and to other exceptions to conveyance and warranty." The only "prior lien" identified in the deeds is the one securing the loan from Metro Bank. Under the heading "[o]ther exception[] to Conveyance and Warranty," each of the deeds has the single phrase "[s]ame as set forth in Deed of even date herewith from Beneficiary to Grantor." Under the "General Provisions" heading, the deeds indicate that the liens they secure are superior to later-created liens. Under this heading, the deeds also indicate that they are subordinate to the liens favoring Metro Bank. Both deeds contain markings indicating that they were filed with the county clerk's office.

In 1999, Blue Bonnet defaulted on the notes favoring Lee and I-10. I-10 then foreclosed on the property and bought it at the foreclosure sale. Lee, however, did not foreclose at that time. Later in 1999, Lee filed the present lawsuit. In his initial pleadings, Lee raised several issues and claims; he sought a declaratory judgment establishing his interest in the hotel property and alleged that Wu breached his fiduciary duty and fraudulently induced Lee to not foreclose on the property when I-10 did.

On May 28 and 30, 2002, the trial court held a hearing regarding Lee's request for a declaration of rights concerning the validity of his lien. On June 5, the trial court issued an order holding that Lee's and I-10's liens "were of Equal Dignity," that Lee's lien therefore survived and was not extinguished or otherwise impaired by I-10's foreclosure on its lien, and that Lee was entitled to foreclose on his own lien. In September 2002, Lee foreclosed on his lien against the hotel property then owned by I-10. Thereafter, Lee also amended his pleadings to assert a trespass-to-try-title cause of action, a claim that he would later nonsuit, and to add a request for a declaration of ownership.

Litigation over the remaining issues in the case continued for several years. After a 2008 jury trial primarily on fraud, the court entered judgment reconfirming its earlier order that the liens were of equal value and I-10's earlier foreclosure did not extinguish Lee's rights and holding that after Lee's foreclosure, the parties had equal rights to

3

ownership. The court also awarded attorney's fees to Lee under the Declaratory Judgments Act and, based on the jury's verdict, awarded Lee $2.7 million for fraud. However, at the parties' urging, the court subsequently granted a new trial on the fraud issue. Before a new trial could commence, Lee amended his pleadings with leave of court to include a claim for an accounting, seeking a share of the income I-10 had derived from the property since Lee's foreclosure. At the conclusion of the second trial, the jury found no fraud was proven but assessed Lee's share of income from the property at almost $608,000. The trial court entered final judgment in accordance with its prior orders regarding the liens and ownership of the hotel property, as well as the second jury's findings. The court also awarded attorney's fees and prejudgment interest to Lee.

## II. Ownership of the Hotel Property

In its third issue, I-10 asserts that the trial court erred in determining that Lee owned 50 percent of the hotel property. According to I-10, it owns 100 percent of the property as a matter of law because it foreclosed on its lien first, so that when it then bought the property at the foreclosure sale, Lee's lien was extinguished and I-10 took title unencumbered by Lee's lien. Although I-10 correctly phrases the question as whether the title it received from the foreclosure sale was subject to Lee's lien and deed of trust, we do not otherwise agree with I-10's arguments.

As I-10 points out, the deed of trust it received from Blue Bonnet instructed the trustee upon foreclosure to convey the property to the purchaser subject to prior liens and other exceptions. Lee's lien is not identified in I-10's deed of trust as either a prior lien or an exception (Metro Bank's lien is the only other lien expressly identified).[2] I-10 argues that because the deed of trust specifically defined the encumbrances to which a conveyance after foreclosure would be subject and did not identify Lee's lien, then the

---

[2] It is undisputed, however, that all of the documents (both notes and both deeds of trust) were executed at the same time and as part of the same transaction. *See generally Nickels v. Casburg*, No. 03-05-00027-CV, 2009 WL 1708830, at *10 n.15 (Tex. App.—Austin June 18, 2009, pet. denied) (mem. op.) (following rule that instruments executed at the same time and in the course of the same transaction should be read and construed together).

4

property passed without being unencumbered by Lee's lien. I-10 further contends that the description in the two notes of the liens being of "equal dignity" has no impact on whether Lee's lien was extinguished by the foreclosure sale or whether I-10 took the hotel property at foreclosure subject to Lee's lien. I-10 has not cited any authority that supports these positions.

It is well settled in Texas that a valid foreclosure on a senior lien (sometimes referred to as a "superior" lien) extinguishes a junior lien (sometimes referred to as "inferior" or "subordinate") if there are not sufficient excess proceeds from the foreclosure sale to satisfy the junior lien. *See, e.g., Diversified Mortg. Investors v. Lloyd D. Blaylock Gen. Contractor, Inc.*, 576 S.W.2d 794, 808 (Tex. 1978); *Kothari v. Oyervidez*, 373 S.W.3d 801, 807 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *Elbar Invs., Inc. v. Wilkinson*, No. 14-99-00297-CV, 2003 WL 22176624, at \*2 (Tex. App.—Houston [14th Dist.] Sept. 23, 2003, pet. denied) (mem. op.). In other words, the purchaser at the foreclosure sale takes title free from the junior lien. *Nat'l W. Life Ins. Co. v. Acreman*, 425 S.W.2d 815, 817-18 (Tex. 1968); *Poston v. Wachovia Mortg. Corp.*, No. 14-11-00485-CV, 2012 WL 1606340, at \*2 (Tex. App.—Houston [14th Dist.] May 8, 2012, pet. denied) (mem. op.). Conversely, it is also clear that under most circumstances, foreclosure on a junior lien will not extinguish a senior lien and the purchaser at the foreclosure sale will take subject to the senior lien. *See, e.g., KCB Equities, Inc. v. HSBC Bank USA, N.A.*, No. 05-10-01648-CV, 2012 WL 1985899, at \*2 (Tex. App.—Dallas June 4, 2012, no pet.) (mem. op.); *Northside Marketplace W.D. '97, Ltd. v. David Christopher, Inc.*, No. 02-03-00276-CV, 2005 WL 3118794, at \*4 (Tex. App.—Fort Worth Nov. 23, 2005, no pet.) (mem. op.); *see also* Restatement (Third) of Property: Mortgages § 7.1 (1997).[3]

Only a few Texas cases discuss "equal dignity" liens created as part of the same transaction or otherwise. However, the existing cases conclude that foreclosure of one of

---

[3] An exception to this rule occurs when the holder of a senior lien agreed to subordinate that lien to another encumbrance upon the land. *See generally* Restatement (Third) of Property: Mortgages § 7.7 & cmt. a.

the co-equal liens does not by itself extinguish the other co-equal lien, just as foreclosure on a junior lien does not generally affect the rights of a senior lienholder. *See, e.g., Douglass v. Blount*, 67 S.W. 484, 490 (Tex. 1902) (explaining that foreclosure and sale on one equal dignity lien did not impair rights of other equal dignity lienholder, who retained same right to foreclosure; furthermore, purchaser held title subject to remaining lien); *Matthews v. First State Bank*, 312 S.W.2d 571, 581 (Tex. Civ. App.—Beaumont 1958, writ ref'd n.r.e.) (holding that where there are more than one "liens of equal rank," the owner of one such lien "may foreclose his lien and the other owners of equal liens are not indispensable or necessary parties" and further explaining that the purchaser essentially takes subject to the remaining liens); *see generally* 63 Tex. Jur. 3d *Real Estate Sales* §§ 422, 424 (2002).[4]

As mentioned, I-10 insists that because its deed of trust specifically defined the encumbrances to which a conveyance after foreclosure would be subject and did not identify Lee's lien, the property passed without being encumbered by Lee's lien. However, a lien of equal dignity with the foreclosed lien cannot be extinguished so easily. Indeed, as with a senior lien, the co-equal lien is not extinguished by foreclosure unless subrogated to the lien being foreclosed. *See Goidl v. N. Am. Mortg. Investors*, 564 S.W.2d 493, 495 (Tex. Civ. App.—Dallas 1978, no writ) (holding that vender's lien was not subordinated to other lien where lien was not expressly stated to be subordinate, even though deed of trust contained a subordinating provision); *Rogers v. Smith*, 31 S.W.2d 871, 874 (Tex. Civ. App.—San Antonio 1930, no writ) (holding lienholder of equal dignity lien did not waive equal rights to have satisfaction out of the land and distinguishing case where lienholder expressly agreed to subordinate lien); *McClendon v. Gahagan*, 6 S.W.2d 796, 799 (Tex. Civ. App.—Waco 1928, writ dism'd w.o.j.) (holding all notes on property issued at same time were of equal dignity where lien stated such and there was no evidence to the contrary). I-10 does not expressly argue, and there is no

---

[4] *Accord Lewis v. Ross*, 67 S.W. 405, 407 (Tex. 1902); *Price v. Bevers*, 91 S.W.2d 797, 800-01 (Tex. Civ. App.—Beaumont 1936), *rev'd on other grounds*, 120 S.W.2d 441 (Tex. Comm'n App. 1938).

evidence supporting a conclusion, that Lee subordinated his lien to that of I-10.[5] Consequently, I-10's contention that Lee's lien was extinguished by the foreclosure sale is without merit.

I-10 additionally argues that because it foreclosed against Blue Bonnet first, and Lee only foreclosed against Blue Bonnet after I-10 bought the property at the foreclosure sale, I-10 has superior title to Lee. I-10 bases its assertion on the rule that when two people obtain title to the same property from the same source, the person who received title from the common source first generally has the superior claim. *See, e.g., Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 39 (Tex. App.—Houston [1st Dist.] 2011, no pet.). However, that is not what happened in the present case. I-10 did foreclose on the property first, while Blue Bonnet still held title to it. Lee, however, did not foreclose *on Blue Bonnet* as I-10 suggests; Lee foreclosed *on the hotel property* after I-10 received title in the foreclosure sale. The trial court order approving the foreclosure makes this clear. Hence, although both I-10 and Lee based their foreclosures on liens they obtained when the property was sold to Blue Bonnet, they did not receive title to the property from the same source. I-10, not Blue Bonnet, owned the property when Lee foreclosed.

I-10 contends that it owns, as a matter of law, a 100 percent interest in the property, free of Lee's lien. As explained above, I-10's arguments are not correct.[6] We overrule I-10's third issue.

---

[5] As explained, even if language in I-10's deed of trust could have subordinated Lee's lien to I-10's lien, the deed of trust does not even mention Lee's lien. Both Lee's note and I-10's note expressly state that the liens created therein are of equal dignity, one with the other. *See Nickels*, 2009 WL 1708830, at *10 n.15 (stating rule that instruments executed at the same time and in the course of the same transaction should be read and construed together). It is also important to note that Lee's deed of trust did not identify I-10's lien as a superior lien or one to which Lee's lien was subordinate.

[6] Lee does not contend in this appeal that he owned 100 percent of the property as a matter of law or that a second foreclosure sale should have occurred when he foreclosed on the property. Accordingly, we need not determine whether the trial court erred in holding that I-10 owned any interest in the property. *See, e.g., Pat Baker Co. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998) (per curiam) ("It is axiomatic that an appellate court cannot reverse a trial court's judgment absent properly assigned error.").

7

### III. Declaratory Judgment or Trespass to Try Title?

In its first issue, I-10 contends that the trial court erred in determining property ownership in a declaratory judgment action and also that Lee waived his trespass-to-try-title cause of action by not pursuing it in the trial court. In its second issue, I-10 contends the trial court erred in awarding attorney's fees in a case involving title to property. Because resolution of these issues is interwoven, we will consider them together. We overrule both issues.

The line segregating claims impacting title to property that *can* be brought as declaratory judgment actions from those claims impacting title that *must* be brought as trespass-to-try-title actions is not a clear one under current Texas law. The uncertainty originates with two legislative directives that appear to overlap to some degree. Section 22.001(a) of the Property Code mandates that "[a] trespass to try title action is the method of determining title to lands, tenements, or other real property." Tex. Prop. Code § 22.001(a). The Uniform Declaratory Judgments Act ("DJA"), however, provides that "[a] person interested under a deed . . . may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder." Tex. Civ. Prac. & Rem. Code § 37.004(a).

As the Texas Supreme Court recognized in *Martin v. Amerman*, these statutes differ in both their pleading and proof requirements and as to whether attorney's fees are available to the successful party. 133 S.W.3d 262, 265, 267 (Tex. 2004), *superseded on other grounds by statute*, Tex. Civ. Prac. & Rem. Code § 37.004(a). A trespass-to-try-title lawsuit is an action to recover possession of land withheld from an owner with a right to immediate possession. *See id.* at 265 (citing *Standard Oil Co. of Tex. v. Marshall*, 265 F.2d 46, 50 (5th Cir. 1959)); *Dougherty v. Humphrey*, 424 S.W.2d 617, 621 (Tex. 1968); Leopold, Aloysius A., 5A Texas Practice: Land Titles and Land Examination § 42.4 (3d ed. 2005). Such suits have detailed pleading and proof requirements and do not permit recovery of attorney's fees. *Martin*, 133 S.W.3d at 265, 267. The DJA, on the other hand, "provides an efficient vehicle for parties to seek a

8

declaration of rights under certain instruments," and permits an award of attorney's fees subject to the trial court's discretion. *Id*. at 265. Given the mandatory language in Property Code section 22.001 ("[a] trespass to try title action is *the* method of determining title") (emphasis added), a party may not artfully plead a title dispute as a declaratory judgment action just to obtain attorney's fees when that claim should have been brought as a trespass-to-try-title action. *See id*. at 267.

Although the post-*Martin* caselaw addressing these distinctions has been described as "contradictory and confused," in large part because construing the terms of land contracts and deeds often implicates the issue of title, whether or not title is awarded in a particular case,[7] courts, including this one, appear to agree that if resolution of a dispute does not require a determination of which party owned title at a particular time, the dispute could properly be raised in a declaratory judgment action; in other words, if the determination only *prospectively* implicates title, then the dispute does not have to be brought as a trespass-to-try-title action. *See, e.g., Chase Home Fin., L.L.C. v. Cal W. Reconveyance Corp.*, 309 S.W.3d 619, 633-34 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding declaratory relief was available to determine validity of competing instruments and resolving dispute between two purported lienholders); *Red Rock Props. 2005, Ltd. v. Chase Home Fin., L.L.C.*, No. 14-08-00352-CV, 2009 WL 1795037, at *5-6 (Tex. App.—Houston [14th Dist.] June 25, 2009, no pet.) (mem. op.) (recognizing DJA dispute over lien superiority prospectively impacts title); *Max Duncan Family Invs., Ltd. v. NTFN Inc.*, 267 S.W.3d 447, 453-54 (Tex. App.—Dallas 2008, pet. denied) (holding trial court did not abuse its discretion in awarding attorney's fees in DJA action concerning validity of real estate lien).[8]

---

[7] *See Roberson v. City of Austin*, 157 S.W.3d 130, 135 (Tex. App.—Austin 2005, pet. denied) (discussing application of *Martin* in easement context); *see also Cadle Co. v. Ortiz*, 227 S.W.3d 831, 837 (Tex. App.—Corpus Christi 2007, pet. denied) (quoting *Roberson*).

[8] At least one court would appear to go further and hold that if the "central issue" in a case is the validity of a lien, then the case could be brought as a declaratory judgment action, even though that determination would have an immediate impact on title. *Cadle Co.*, 227 S.W.3d at 837 (affirming trial court's finding of wrongful foreclosure in a declaratory judgment action). *But cf. Hawk v. E.K. Arledge*,

The facts of the present case present an unusual set of circumstances. When Lee filed his lawsuit in 1999, he did not have a current right of title to or possession of the hotel property. At that time, he possessed only rights under his note and related lien on the property. In fact, in his original pleadings, Lee primarily sought a declaration of rights under his lien, not actual title to the hotel property. In 2002, the trial court held a bench trial and ruled on Lee's request, holding that Lee's and I-10's liens were of "Equal Dignity."

After the bench trial, Lee foreclosed on his lien and subsequently raised and later nonsuited a trespass-to-try-title action. Lee also added a request in his pleadings for a declaration of ownership in the hotel property. Although the court subsequently held two jury trials and made rulings on other issues, the court never modified its declarations regarding the liens.[9] In its final judgment, the trial court indicated that Lee and I-10 each owned 50 percent of the hotel property and was the owner of an undivided one-half interest in the property. The court also awarded attorney's fees to Lee "for preparation and trial of the earlier declaratory judgment."

As set forth above, I-10 contends in its first and second issues that Lee waived any determination of property ownership in this lawsuit when he nonsuited his trespass-to-try-title action and instead sought a declaration of property ownership.[10] I-10 further contends that the trial court erred by making express declarations regarding property ownership in the final judgment and awarding attorney's fees to Lee.

Texas courts consider the substance and not the form of the pleadings to determine whether an action is properly considered as a trespass or declaratory judgment action.

_Inc._, 107 S.W.3d 79, 84 (Tex. App.—Eastland 2003, pet. denied) (modifying trial court's judgment to remove attorney's fees award under the DJA where case involved competing foreclosure sales).

[9] In 2002, the only property interest issue before the court was the validity of Lee's lien. Had there not been other issues outstanding at that time (_e.g._, breach of fiduciary duty, fraud), the 2002 order would likely have been a final judgment.

[10] Both I-10 in its briefing, and the trial court in its holdings, made clear that after nonsuiting his trespass action, Lee still sought a declaration of rights in the property. It is also noteworthy that in its final judgment, the trial court dismissed I-10's trespass-to-try-title action as moot.

10

*See, e.g., Longoria v. Lasater*, 292 S.W.3d 156, 165 (Tex. App.—San Antonio 2009, pet. denied); *Hawk v. E.K. Arledge, Inc.*, 107 S.W.3d 79, 84 (Tex. App.—Eastland 2003, pet. denied); *Bell v. State Dept. of Highways & Public Transp.*, 945 S.W.2d 292, 294 (Tex. App.—Houston [1st Dist.] 1997, writ denied), *abrogated on other grounds by Harris County v. Sykes*, 136 S.W.3d 635 (Tex. 2004); *see also Kennedy Con., Inc. v. Forman*, 316 S.W.3d 129, (Tex. App.—Houston [14th Dist.] no pet.) ("Any suit involving a dispute over the title to land is an action in trespass to try title, whatever its form and regardless of whether legal or equitable relief is sought."). Thus, the fact that Lee had nonsuited his trespass-to-try-title action does not mean that he waived his claim to ownership of the property where he sought essentially the same relief in his declaratory judgment action. We simply interpret the declaratory judgment request as a trespass-to-try-title action. *See Longoria*, 292 S.W.3d at 165; *Hawk*, 107 S.W.3d at 84; *Bell*, 945 S.W.2d at 294. Moreover, the mere fact that the trial court referred to its pronouncements regarding title as "declarations" does not mean that the trial court erred. *Cf. John G. and Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 289 (Tex. 2002) (finding no error where declaratory relief was merely incidental to issues of title).

As discussed, one key distinction between a trespass to try title action and a declaratory judgment action is that attorney's fees are not recoverable in the former but are recoverable in the latter. The trial court in this case made its original declaration that the liens were of equal dignity in a 2002 order. This order was properly made in a declaratory judgment action because it only prospectively implicated title. *See Chase Home Fin.*, 309 S.W.3d at 633-34; *Red Rock Props. 2005*, 2009 WL 1795037, at *5-6; *Max Duncan Family Invs.*, 267 S.W.3d at 453-54. In a 2008 order, the court reconfirmed that earlier holding, found that after Lee's foreclosure Lee and Wu each owned 50 percent of the property, and awarded attorney's fees under the DJA. Attorney's fees were properly awarded under the DJA for the 2002 declaration regarding liens; however, fees could not be properly awarded for the 2008 determination of ownership because this

11

holding was in resolution of a trespass-to-try-title cause of action. In its final judgment signed in 2010, the court awarded attorney's fees "for preparation and trial of the earlier declaratory judgment."

On appeal, I-10 argues that Lee was not entitled to recover any attorney's fees in this case. We disagree because, as discussed, fees were recoverable under the DJA for the 2002 declarations regarding the priority of liens. I-10 does not argue on appeal that Lee failed to properly segregate his attorney's fees between claims on which such fees were recoverable and claims on which such claims were not recoverable. We also have not been directed to or discovered any place in the trial record where I-10 objected to Lee's failure to segregate fees. A failure to raise the segregation issue on appeal or in the trial court waives the issue. *Jespersen v. Sweetwater Ranch Apts.*, No. 05-11-00583-CV, 2012 WL 6042536, at *15 n.3 (Tex. App.—Dallas Dec. 5, 2012, no pet. h.) (citing *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997)). Finding no merit in the arguments I-10 raises under its first and second issues, we overrule those issues.

### IV. Jury Instruction on Cost of Improvements

In its fourth issue, I-10 contends that the trial court erred in instructing the jury that it should not subtract the cost of certain improvements when calculating property income. In Question No. 6 of the charge, the jury was asked to calculate Lee's share of income from the hotel property for the period that I-10 unlawfully excluded him from the property. In association with this question, the jury was instructed to subtract from the income any reasonable and necessary expenditures for the preservation of the property as well as the cost of any improvements to which Lee consented. The jury was further instructed not to subtract any amount for improvements to which Lee did not consent. I-10 objected that the jury should be instructed to subtract the cost of all improvements to the property, regardless of whether Lee consented to them.

The determination of whether to submit a particular instruction is reviewed for an abuse of discretion. *See State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 451 (Tex. 1997). However, the question of whether a given instruction, such as the one at issue here, is

properly worded is a question of law reviewed de novo. *Lee v. Lee*, 47 S.W.3d 767, 790 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

It appears well settled in Texas that when one cotenant expends funds to improve a jointly owned property, a nonconsenting cotenant is under no obligation to reimburse or contribute to those expenses. *See Cox v. Davison*, 397 S.W.2d 200, 201 (Tex. 1965); *Bailey-Mason v. Mason*, 334 S.W.3d 39, 45-46 (Tex. App.—Dallas 2008, pet. denied); *Perez v. Hernandez*, 658 S.W.2d 697, 701 (Tex. App.–Corpus Christi 1983, no writ). I-10 cites several cases wherein a court considered the value of the enhancement to the property wrought by such improvements in an action for partition. *See McGehee v. Campbell*, No. 01-08-01023-CV, 2010 WL 1241300, at *5 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (mem. op.); *Trevino v. Trevino*, 64 S.W.3d 166, 174 (Tex. App.—San Antonio 2001, no pet.); *Oeschner v. Courcier*, 155 S.W.2d 963, 964-65 (Tex. Civ. App.—Fort Worth 1941, writ ref'd). However, since neither Lee nor I-10 seeks a partition of their interests in the hotel property in the present case, these partition cases are inapposite. In short, the trial court properly instructed the jury to disregard any improvements to the property to which Lee did not consent. *See Cox*, 397 S.W.2d at 201; *Bailey-Mason*, 334 S.W.3d at 45-46; *Perez*, 658 S.W.2d at 701.[11] We overrule I-10's fourth issue.

## V. Jury Instruction on Subtracting Salaries

In its fifth issue, I-10 asserts that the trial court erred in instructing the jury that it should not subtract the salaries paid to Henry and Emily Wu when calculating income

---

[11] I-10 also cites to *Stephenson v. Luttrell* as a case wherein the Texas Supreme Court approved allocation of part of the cost of an improvement to a nonconsenting cotenant in an accounting not incident to a partition. 179 S.W. 260, 262 (Tex. 1915). *Stephenson*, however, is also readily distinguishable from the present case. In *Stephenson*, the trial court determined that the cotenant who made the improvements was entitled to reimbursement because (1) the expenditure was necessary to prevent the jointly held property from becoming valueless and (2) the cotenant was unable to determine the owner of the particular interest in part because a conveyance had not been recorded in the property records. *Id*. at 261-62. The supreme court held that there was sufficient evidence to support the trial court's determinations. *Id*. at 261. *Stephenson* offers no support for the proposition that a nonconsenting cotenant can be required to reimburse the costs of improvements which were not reasonable and necessary for the preservation of the property.

13

from the hotel property.  As with the previous issue, we consider this issue under a de novo standard.  *See Lee*, 47 S.W.3d at 790.

I-10 first asserts that "a salary paid for personal services performed in operating a business on property is not a prohibited management fee, but rather is an expense that may be deducted from income in calculating a cotenant's profit."  However, the one case I-10 cites, *White v. Smyth*, does not support this contention and is distinguishable from the present case.  214 S.W.2d 967 (Tex. 1948).  *White* involved the removal of minerals (rock asphalt) from jointly owned land, not the operation of a business on the property.  *Id.* at 969.  In cases involving extraction of minerals, a nonproducing cotenant is entitled to a share of the value of the minerals taken less the necessary and reasonable costs of production and marketing.  *See Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419, 426 (Tex. 2008); *White*, 214 S.W.2d at 978.

The general rule for cotenants in Texas is that they are required to share any income or rents generated from the jointly-owned property according to their respective interests, but they also must share the reasonable and necessary expenditures for preservation of the property.  *See McGehee*, 2010 WL 1241300, at *5; *Williams v. Shamburger*, 638 S.W.2d 639, 640 (Tex. App.—Waco 1982, writ ref'd n.r.e.); *see also Karp v. Karp*, No. 14-01-00902-CV, 2002 WL 31487899, at *2 (Tex. App.—Houston [14th Dist.] Nov. 7, 2002, no pet.) (not designated for publication).  The income and rents may be offset against the expenditures and vice versa.  *Williams*, 638 S.W.2d at 640; *see also Gonzales v. Gonzales*, 552 S.W.2d 175, 180 (Tex. Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.) ("The trial court did not abuse its discretion in allowing a credit for all the expenses that were found to be necessary in the care, maintenance and preservation of [the] properties . . . .").  However, a cotenant, such as I-10, that takes control of jointly-owned property is not entitled to compensation for personal services rendered in managing the property, absent an agreement with the other cotenants.  *See Gonzales*, 552 S.W.2d at 182; *Neal v. Neal*, 470 S.W.2d 383, 386 (Tex. Civ. App.—Houston [1st Dist.] 1971, no writ); *see also Lilly v. Lilly*, No. 06-00-00064-CV, 2001 WL 169790, at * 3

14

(Tex. App.—Texarkana Feb. 22, 2001, no pet.) (not designated for publication). Here, there clearly was no agreement between Lee and I-10 for the payment or offset of management fees; moreover, I-10 does not contend that the fees were somehow necessary for preservation of the property. I-10's first argument is without merit.

I-10 additionally points out that the salaries in question were not paid to I-10 but were paid by I-10 to the Wu's. Beyond making the complaint, however, I-10 does not offer any analysis or citation to authority, and only offers one short citation to the record of Lee's damages expert's testimony. This argument was therefore waived by improper briefing. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").[12] We consequently overrule I-10's fifth issue.

## VI. Calculation of Prejudgment Interest

In issue six, I-10 alleges the trial court erred in deriving the start date for the calculation of prejudgment interest. In Texas, prejudgment interest accrues beginning either on the 180th day after the defendant received written notice of the claim or on the date the suit was filed, whichever occurs first. Tex. Fin. Code §304.104 (governing claims of wrongful death, personal injury, and property damage); *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 531 (Tex. 1998) (adopting rule from predecessor to section 304.104 for general application under the common law). The awarding of prejudgment interest serves two purposes: (1) fully compensating plaintiffs for the lost use of money, and (2) encouraging both settlement and speedy trials. *See Johnson & Higgins*, 962 S.W.2d at 528, 530; *Tex Star Motors, Inc. v. Regal Fin. Co.*, No. 14-05-00215-CV, 2012 WL 58945, at *12 (Tex. App.—Houston [14th Dist.] Jan. 10, 2012, no pet.).

Here, the trial court awarded prejudgment interest to accrue from 180 days after the date that the court had previously authorized for Lee's foreclosure on the hotel

---

[12] It is additionally worth noting that at no point does I-10 dispute that it was owned and controlled by Henry Wu.

property. The authorized date for foreclosure was September 3, 2002, and 180 days after that was February 2, 2003. I-10 contends that the court erred in its calculation of prejudgment interest because I-10 had no written notice of Lee's claim for an accounting until Lee filed an amended petition alleging that claim on March 5, 2010. I-10 urges that date as the date on which prejudgment interest should begin accruing.

We recently addressed substantially similar circumstances in *Tex Star Motors*. In that case, the plaintiff initially filed suit claiming breach of contract for failure to properly maintain a reserve fund. 2012 WL 58945, at *12. Several months later, the plaintiff amended its pleadings to include a claim for breach of a contract to provide administrative and collection services. *Id*. The trial court, however, awarded prejudgment interest to begin accruing on all damages awarded as of the date of the original petition. *Id*. at *13. We reversed and remanded for a recalculation of prejudgment interest based on when particular claims were actually raised in the pleadings. *Id*. In doing so, we emphasized that since one of the purposes of prejudgment interest is to encourage settlement and expedite trial, starting accrual of such interest on a particular claim before that claim was even raised would not serve that purpose. *Id*.

Here, Lee did not provide notice of his claim seeking an accounting until he filed his amended petition specifically asserting the claim on March 5, 2010.[13] Although Lee had raised other claims in earlier petitions, he was not ultimately awarded damages for any of those claims for which prejudgment interest could accrue.[14] It would not be equitable to charge I-10 for prejudgment interest accruing on a claim before it received any notice of that claim. The trial court erred in doing so. Accordingly, we sustain I-10's sixth issue.

---

[13] Although Lee had filed a motion for leave to file his Eighth Amended Petition in January 2010, the trial court did not grant leave to file until March 5.

[14] For example, in earlier petitions, Lee sought fraud damages based in part on I-10's allegedly having wrongfully excluded him from the property while retaining all hotel profits, but the jury in the second trial did not find for Lee on his fraud claim and no fraud damages were awarded in the final judgment. Also, Lee sought a share of the profits through his unjust enrichment and wrongful foreclosure claims, but he ultimately dropped these claims.

16

We reform the trial court's judgment to change the beginning date for accrual of prejudgment interest to March 5, 2010.  We affirm the judgment as so modified.


/s/             Martha Hill Jamison
                         Justice

Panel consists of Chief Justice Hedges and Justices Jamison and McCally.