**AFFIRM; and Opinion Filed December 21, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00671-CV

### HERMELINDA SOTO, Appellant
### V.
### ANSELMO SOTO, Appellee

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-13-00802**

# MEMORANDUM OPINION

Before Justices Lang, Fillmore, and Schenck
Opinion by Justice Fillmore

Hermelina Soto (Hermelina) appeals the trial court's final judgment in favor of Anselmo

Soto (Anselmo) in a suit brought by Anselmo for partition of real property jointly owned by

Hermelina and Anselmo.[1]  In one issue, Hermelina contends the evidence is legally and factually

insufficient to support the trial court's findings of fact and conclusions of law, or to otherwise

support the trial court's final judgment.  We affirm the trial court's judgment.

### BACKGROUND

In March 2007, Anselmo and Hermelinda purchased a house located at 221 Brunswick in

Mesquite, Dallas County, Texas (Property or house).  On January 22, 2013, Anselmo filed suit

---

[1] In this opinion, we refer to the parties by their first names because they share the same surname.

seeking a partition of the jointly-owned Property.[2]  Anselmo filed an Amended Petition on April 9, 2015, alleging that the parties each held a fifty percent interest in the Property, and he had contributed an additional $20,000 toward improvements on the Property.

Because the Property included a single family dwelling that could not be partitioned in kind, Anselmo requested a partitioning by sale of the Property, and asked the trial court to adjust the equitable distribution of the net proceeds of the sale to compensate him for the cost of improvements he made to the Property.  Hermelina answered and filed a counterclaim alleging she paid substantially more than Anselmo toward the purchase price of the Property, taxes, improvements, and repairs, and additionally that Anselmo failed to reimburse her for utilities and household expenses she paid while he was living on the Property from 2007 to 2010.  Hermelina also requested a partitioning by sale of the Property, and asked the trial court to equitably distribute the net proceeds of the sale in a manner that would compensate each party for the pro-rata share each contributed to the Property's purchase price, taxes, insurance, improvements, repairs, and expenditures.

Following a bench trial, the trial court signed a final judgment, dated March 30, 2017, partitioning the Property.  The trial court ordered that the Property be sold, a receiver appointed to oversee its sale, and the parties receive an equal distribution of the net proceeds of the sale, with fifty percent of the net proceeds payable to Anselmo and fifty percent of the net proceedings payable to Hermelina.[3]  The trial court entered findings of fact and conclusions of law on May 9, 2017.  This appeal followed.

---

[2] The Special Warranty Deed conveying the Property states Anselmo and Hermelina are husband and wife, but pleadings and trial testimony clarify this was a scriveners's error, and the parties are siblings.

[3] On May 8, 2017, Anselmo's counsel filed a suggestion of death with the trial court, notifying the trial court and Hermelina that Anselmo had died.  An August 16, 2017 order of this Court noted Anselmo died on May 1, 2017, and stated an appeal in a civil case affecting the parties' property rights is not mooted by the death of a party.

**PARTITION**

*Standard of Review*

A trial court's findings of fact after a bench trial have the same force and effect as a jury verdict. *Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.). We review a trial court's findings of fact under the same legal and factual sufficiency of the evidence standards used when determining whether sufficient evidence exists to support a jury finding. *Id.* The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and it is the province of the fact-finder to resolve conflicts and inconsistencies in the testimony. *City of Keller v. Wilson*, 168 S.W.3d 802, 819–20 (Tex. 2005) (legal sufficiency); *Peerless Indemn. Ins. Co. v. GLS Masonry, Inc.*, No. 05-16-00875-CV, 2018 WL 3491045, at \*4 (Tex. App.—Dallas Jul. 20, 2018, no pet.) (mem. op.) (factual sufficiency). We defer to a trial court's unchallenged findings of fact supported by some evidence. *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 523 (Tex. 2014). We review the trial court's conclusions of law de novo, and will affirm if the trial court's judgment can be sustained on any legal theory supported by the evidence. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *see also Sheetz v. Slaughter*, 503 S.W.3d 495, 502 (Tex. App.—Dallas 2016, no pet.). If the trial court rendered the proper judgment, we will not reverse based on an erroneous conclusion of law. *BMC Software*, 83 S.W.3d at 794.

When a party challenges the legal sufficiency of the evidence supporting an adverse finding on an issue on which she had the burden of proof at trial, she must demonstrate the evidence establishes as a matter of law all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). In reviewing a "matter-of-law" challenge, we first examine the record for evidence that supports the adverse finding, crediting favorable evidence if a reasonable fact-finder could, while disregarding all evidence to the contrary, unless a reasonable

fact-finder could not. *Id.* Anything more than a scintilla of evidence is legally sufficient to support the finding. *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 69 (Tex. 2000). Only if there is no evidence to support the adverse finding do we then examine the entire record to determine whether the contrary proposition is established as a matter of law. *Brandt Companies, LLC v. Beard Process Solutions, Inc.*, No. 05-17-00780-CV, 2018 WL 4103210, at *9 (Tex. App.—Dallas Aug. 29, 2018, no pet. h.) (mem. op.). The issue will be sustained only if the contrary proposition is conclusively established. *Id.*

When a party challenges the factual sufficiency of the evidence supporting an adverse finding on an issue on which she had the burden of proof at trial, we weigh all of the evidence and will set aside the adverse finding only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Dow Chem. Co.*, 46 S.W.3d at 242. *See also Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

*Applicable Law*

"A joint owner or claimant of real property or an interest in real property . . . may compel a partition of the interest or the property among the joint owners or claimants[.]" TEX. PROP. CODE ANN. § 23.001. When a party seeks partition, the trial court shall "determine the share or interest of each of the joint owners or claimants in the real estate sought to be divided, and all questions of law or equity affecting the title to such land which may arise." TEX. R. CIV. P. 760. The trial court shall order partition if it "determines that the whole, or any part of such property is susceptible of partition." TEX. R. CIV. P. 761. "Should the court be of the opinion that a fair and equitable division of the real estate, or any part thereof, cannot be made, it shall order a sale of so much as is incapable of partition." TEX. R. CIV. P. 770.

On partition, a co-tenant who expends funds to protect or preserve the common property is entitled to have those expenditures charged to the tenants in common according to their pro rata

ownership. *See McGehee v. Campbell*, No. 01-08-01023-CV, 2010 WL 1241300, at *3 (Tex. App.—Houston [1st Dist.] Mar. 25, 2010, no pet.) (mem.op.). Payments made for taxes and repairs constitute necessary expenditures to preserve the common property. *Id.*

Co-tenants of property have a right to equal possession of the property. *Todd v. Bruner*, 365 S.W.2d 155, 160 (Tex. 1963). "A cotenant in possession who excludes another cotenant is liable to the excluded cotenant for the rental value of his or her possession." *McGehee*, 2010 WL 1241300, at *4. Co-tenants of property generally must share income or rents generated from the jointly-owned property according to their respective interests. *I-10 Colony, Inc. v. Chao Kuan Lee*, 393 S.W.3d 467, 478 (Tex. App.—Houston [14th Dist.] Dec. 28, 2012, pet. denied).

*The Trial*

Anselmo testified he provided $25,000 of the $35,299.19 purchase price for the Property, and Hermelinda provided the balance. The purchase price was paid to the title company by cashier's check in the amount of $35,299.19 from "Hermelinda and Anselmo Soto" as remitters.[4] The Property was conveyed by Special Warranty Deed to "Anselmo Soto and Hermelinda Soto."[5]

According to Anselmo, "the house need[ed] a lot of work," which he paid for or performed, including plumbing, sheetrock, and painting. Anselmo testified he gave cash to Hermelinda to pay for taxes and utilities while he was living at the house, and never asked for a receipt because he "trusted her as [his] sister." Anselmo moved out of the house in 2009 because Hermelinda and her family "made it uncomfortable for [him] to live there." Hermelinda "rent[ed] out" rooms in the house, and never shared any of the rent money she received with Anselmo. The parties stipulated Anselmo did not pay for taxes on the Property after he moved out of the house.

---

[4] The cashier's check was admitted into evidence at trial.

[5] The Special Warranty Deed was admitted into evidence at trial.

Hermelinda testified Anselmo contributed $12,000 toward the purchase price of the Property. According to Hermelinda, Anselmo gave her a check in the amount of $8,000, "paid $3,000 to [her] brother," and paid $1,000 in escrow when they purchased the Property. Hermelinda claimed she paid $23,099.19 toward the purchase price of the Property, consisting of a $10,000 loan from her friend, Ippolito Garcia, $3,000 provided to her by Santiago Soto,[6] and money contributed by her and her son. Hermelinda did not sign a promissory note or any other document relating to the $10,000 loan from Garcia; nor did Garcia obtain a deed of trust or any other security for repayment of the loan. Hermelinda testified Anselmo moved out of the house in July 2010. Early in her testimony, Hermelinda stated Anselmo paid "[a]bout eight or nine [utility] bills" while he lived in the house, but she later testified he paid only "the electric bill, 10 months." She claimed Anselmo did not pay any taxes while he was living in the house. Tax receipts admitted into evidence name Anselmo and Hermelinda as "payer," and show taxes were usually paid in cash. The record included a copy of one check from Hermelinda's personal bank account for payment of taxes. Hermelinda testified her son paid $5,000 to a repairman, and Anselmo did not make any repairs to the Property. Garcia testified he loaned Hermelinda $10,000 to purchase the Property, she re-paid the loan, and she signed a document when she paid the loan.[7]

*Analysis*

Hermelinda contends the evidence is legally and factually insufficient to support the trial court's finding of fact number three, which stated, "Plaintiff and Defendant each contributed 50% of the Purchase Price." Hermelinda had the burden of proof on her counterclaim to establish she paid over fifty percent of the Property's purchase price. "Hermelinda and Anselmo Soto," as remitters, paid for the Property by cashier's check drawn from Hermelinda's bank account payable

---

[6] Hermelinda's relationship to Santiago Soto is not described in the trial transcript.

[7] The document was not identified or admitted into evidence at trial.

to the title company in the amount of $35,299.19, the remaining amount of the purchase price after application of a $1,000 deposit held in escrow. Hermelinda testified she contributed $23,099.19 toward the total purchase price of $36,299.19, consisting of a $10,000 loan from Garcia, $3,000 given to her by Santiago Soto, her money, and her son's money. However, Hermelinda did not sign a promissory note documenting the loan from Garcia, and Garcia did not obtain any security for repayment of the loan. Hermelinda testified Anselmo contributed a total of $12,000 to the Property's purchase price, consisting of a $1,000 escrow deposit for the Property, $3,000 Anselmo gave to Hermelinda's brother, and $8,000 Anselmo gave to her by check. Anselmo testified he contributed $25,000 toward the Property's purchase price. According to Anselmo, he "got the money to purchase th[e] cahsier's check" from his savings, which he "[kept] at home" and not at a bank. The trial court could reasonably conclude Anselmo gave cash to Hermelinda for his contribution to the purchase price of the Property, because Anselmo testified he "usually" gave Hermelinda cash to pay his portion of Property taxes and utility expenses, and Property tax receipts indicated Property taxes were paid by cash or check. The Special Warranty Deed conveyed the Property to "Anselmo Soto and Hermelinda Soto."

Regarding Hermelinda's legal sufficiency challenge to the trial court's finding of fact number three, based on the above-referenced evidence and deferring to the trial court's resolution of conflicts and inconsistencies in the evidence, *see City of Keller*, 168 S.W.3d at 819–20, we conclude more than a scintilla of evidence supported the trial court's finding that Anselmo and Hermelinda contributed equally to the purchase price of the Property. *See Zimlich*, 29 S.W.3d at 69.

Regarding Hermelinda's factual sufficiency challenge, the parties offered conflicting evidence on their respective contributions, and it was the province of the trial court to resolve conflicts and inconsistencies in the evidence. *See Peerless Indemn. Ins. Co.*, 2018 WL 3291045,

at *4.  Viewing all of the evidence in a neutral light and deferring to the trial court's resolution of inconsistencies in the evidence, we conclude the trial court's finding of fact number three that Anselmo and Hermelinda contributed equally to the purchase price of the Property is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.  *See Dow Chem. Co.*, 46 S.W.3d at 242.

Hermelinda contends the evidence is legally and factually insufficient to support the trial court's conclusion of law number nine, which stated, "Plaintiff is entitled to a sale of the Property and a distribution of the sale proceeds.  To achieve a fair and equitable partition of the Property, upon the sale of the Property, Plaintiff is entitled to receive 50% of the net sale proceeds, and Defendant is entitled to receive 50% of the net sale proceeds."  Hermelinda contends the trial court erred by failing to credit her expenditures, including payment of Property taxes and over fifty percent of the Property's purchase price, and avers the trial court's final judgment was not a fair and equitable partition of the Property.  Because the trial court has no discretion in determining what the law is and applying the law to the facts, we review Hermelinda's challenge to conclusion of law number nine de novo.  *Tenaska Energy, Inc.*, 437 S.W.3d at 523.

We have already concluded the evidence is legally and factually sufficient to support the trial court's finding of fact number three that Anselmo and Hermelinda each paid fifty percent of the Property's purchase price.  As to Hermelinda's complaint the trial court failed to properly credit various expenditures, Anselmo testified the house needed a "lot of work" when it was purchased. He moved into the house and either personally, or through contractors, completed plumbing, sheetrock, and painting repairs to the house.  Hermelinda disputed that Anselmo performed any repair work on the house and testified all repairs were done by a contractor whom she paid. Anselmo testified he paid Hermelinda cash for utilities and taxes while he lived in the house. Hermelinda conceded that Anselmo paid her for some utility bills while he was living in the house.

Anselmo moved out of the house in 2009 or 2010, and the trial court could reasonably believe Anselmo's testimony he was pressured by Hermelinda to leave the Property. Anselmo also testified that after he moved out, Hermelinda rented rooms in the house and did not share with him income earned from the rentals. Hermelinda did not offer evidence to the contrary.

In finding of fact number six, the trial court found that Anselmo "ha[d] not paid [P]roperty taxes or utilities on the Property since he discontinued residing at the Property in 2009." However, the trial court could reasonably conclude any deficiency by Anselmo in the payment of taxes or utilities while he was living in the house was offset by the value of the work he performed, or paid to be performed, on the Property, and by Hermelinda's failure to compensate him for the rental value of his possessory rights in the Property, or share rent income earned from the Property, after Anselmo moved out of the house.

Under de novo review, we conclude on this record that the trial court did not err by determining in conclusion of law number nine that, to achieve a fair and equitable partition of the Property, Hermelinda and Anselmo each were entitled to receive fifty percent of the net proceeds from the sale of the Property. We resolve Hermelinda's sole issue against her.

We affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

170671F.P05

–9–



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

HERMELINDA SOTO, Appellant

No. 05-17-00671-CV    V.

ANSELMO SOTO, Appellee

On Appeal from the 162nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-13-00802.
Opinion delivered by Justice Fillmore, Justices Lang and Schenck participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee ANSELMO SOTO recover his costs of this appeal from appellant HERMELINDA SOTO.

Judgment entered this 21st day of December, 2018.